THE PATAPSCO INSURANCE COMPANY *vs.* JAMES BISCOE.
*December,* 1835.

An insurance for a premium for the voyage round, at and from B to C, with the privilege of one other port in the same Island with C, and at and from either of them back to B, on *freight* laden, or to be laden, *valued* at the sum insured, is upon separate and distinct voyages, during the prosecution of which, distinct freights were at risk; and to each of which, as they suc-

cessively came into existence, the whole valuation in the policy ought to be applied, and a total loss on the homeward voyage paid for accordingly.

In the construction of a policy of insurance, as in other contracts, courts are governed by the intention of the parties at the time of making the contract, when it does not conflict with the principles of the law.

Freight is a compensation received for the transportation of goods and merchandise from port to port, and is never claimable by the owner of the vessel until the voyage has been performed.

A valuation in a policy, *unless a fraudulent one*, is always binding and conclusive on the parties. In case of a claim for a total loss upon such a policy, the only legitimate inquiry is, has such a loss occurred, and has it been occasioned by one of the perils insured against, while the policy was operating on the subject matter insured by it.

An abandonment can only operate upon the property or thing saved at the time a loss occurs; not upon that which is safe and no longer exposed to the perils insured against.

APPEAL from *Baltimore* County Court.

This was an action of *Covenant*, instituted by the appellee, against the appellant, on the 20th of March, 1834, on a *valued* policy of insurance on freight.

The defendant pleaded performance of the covenants, and issue was joined upon the plea, and the case was submitted to the county court, upon the following statement:

On the first day of October, 1822, *James Biscoe*, the plaintiff, being the owner of the schooner *Fame*, lying in the port of *Baltimore*, directed to the defendants, the following offer for an insurance upon the freight of said schooner.

" *James Biscoe* wants insurance against all risks, for the schooner *Fame*, *J. Whittington*, master, her freight and cargo from *Baltimore* to *Aux Cayes*, with the privilege of one other port in the island of St. Domingo, and at and from either of them, back to *Baltimore*.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Say on vessel valued at | - | - | - | - | - | $2,000 |
| " | Freight | - | - | - | - | - | 1,000 |
| " | Cargo | - | - | - | - | - | 4,575 |
| | | | | | | | $7,575 |

Please name the premium round, and what return if the second port is not used."

Which was accepted by the defendants upon the terms mentioned in the following policy, dated first of October, 1822.

" This Policy of Insurance witnesseth, that the *Patapsco Insurance Company* have insured and hereby do insure, *James Biscoe*, &c. in part, or in whole, lost or not lost, at and from *Baltimore* to *Aux Cayes*, with the privilege of one other port in the island of *St. Domingo*, and at and from either of them back to *Baltimore ; one thousand dollars* on the freight upon all kinds of lawful goods, &c. laden, or to be laden on board the schooner called the *Fame*, whereof is master, &c. Beginning the adventure upon the said freight, from the loading thereof on board the said vessel at *Baltimore*, and continuing the same, until the said goods and merchandise shall be safely landed at the ports aforesaid. The said freight for so much as concerns this insurance, by agreement between the insured, and insurers, are and shall be *valued* at the sum hereby insured, &c., and so the said insurers are contented, and stand bound to the insured, his executors, administrators and assigns, for the true performance of the premises, confessing themselves paid the consideration for the insurance, by the insured, at, and after the rate of two and three quarters per cent., to return one quarter per cent. if the second port is not used."

That shortly after the execution of the policy, the said schooner, in good condition and properly equipped, sailed on the voyage described in the policy, with a cargo on board from *Baltimore* to *Aux Cayes*, where she arrived in safety, and carried freight for the plaintiff, which was received by him to the amount of $500. That at *Aux Cayes*, the schooner took in another cargo on freight, and without using her privilege for another port, sailed in good condition, &c. from *Aux Cayes*, on her return to the port of *Baltimore*, and that on said return voyage, the said schooner, and her cargo, were totally lost, by one of the perils insured against by the defendants, in consequence whereof, no freight was earned

or received by the plaintiff on the said return voyage. That the plaintiff continued the owner of the schooner until the period of her loss, and that if she had accomplished her said return voyage from *Aux Cayes* to *Baltimore*, she would have earned for the plaintiff on such voyage, freight to the amount of at least $500.

Upon the above statement of facts it is admitted, that the plaintiff is entitled to recover of the defendants, the sum of $500, one half the amount insured, with interest from the first of September, 1823 ; and it is submitted to the court to determine upon said statement, whether the plaintiff is not entitled to recover of the defendants, the whole sum or valuation mentioned in said policy." Judgment to be entered according to the opinion of the court, with liberty to either party to prosecute an appeal to the court of Appeals.

The county court upon this statement, gave judgment for the plaintiff, for the whole sum insured, and the defendants thereupon brought the record before this court.

The cause was argued before BUCHANAN, Ch. J., and STEPHEN, DORSEY, and SPENCE, Judges.

MAYER for the appellant.

The contract of insurance being a contract of indemnity, there should have been abated from the policy, the amount received for freight; the difference only being the amount of the injury sustained by the assured. 3 *Caine's* 16.

There is no difference between open and valued policies, except in the case of a total loss. In that event, if the policy is a valued one, the amount is fixed and certain, but in cases of partial loss, whether the policy be open or valued, the amount of the loss must be the subject of inquiry. *Livingston vs. The Columbian Ins. Co.* 3 *John. Rep.* 49. *Forbes vs. Aspinall*, 13 *East*, 323. *Phillips'* *Ins.* 312, 372.

In the present case, the correctness of the judgment of the county court, depends upon the intention of the parties. If the $1000 was the amount insured upon the whole voyage, out and home, then clearly the amount received at the outward port should be deducted. But if, on the contrary, the in-

tention was to insure $1000 out, and $1000 back, then the judgment should be affirmed. He insisted that the obvious intent and effect of the policy was, to insure the amount of $1000 on the freight out and home, upon the whole circuit of the voyage, and consequently, what was actually received at the outward port should be deducted, because that ceased to be at risk; and so ceasing, the responsibility of the underwriter to that extent was at an end. 3 *Caines*, 210. *Coolidge vs. et al. vs. the Gloucester Mar. Ins. Co.* 15 *Mass.* 341. *Haven et al. vs. Gray*, 12 *Ib.* 71. *Forbes vs. Aspinall*, 13 *East*, 323. 3 *Caine's Cases*, 21.

If the loss had occurred upon the outward voyage, then a recovery for the whole value might have been had, because then the whole was at risk, but that could not be the case, when the outward freight had been earned and received. At all events, the plaintiff cannot recover the whole value, as he has not shown that the vessel would have earned that amount of freight on her homeward voyage. This was indispensable to his right to recover for the full value, or otherwise, the contract is carried beyond a contract of indemnity, which is never allowed. There is nothing to show that a premium was charged on the whole value, out and home.

McMahon for the appellee.

This is a valued policy, and consequently the proof of the extent of the loss is dispensed with, which was the great motive for preferring policies of this description to open policies, which were attended with great inconvenience. The valuation closes all disputes, with reference to the extent of the loss, and for that reason, they are favoured by the courts, unless they be assailed upon the ground of fraud. The value is never examined, unless the disproportion between it and the thing insured is so glaring, as to excite suspicion of unfairness or gambling. 1 *Phillips' Ins.* 306. *Coolidge et al. the Gloucester Mar. Ins. Co.* 15 *Mass.* 341, 344.

In the present case, the disproportion is not such as to give rise to the slightest suspicion.

The voyages out and home were perfectly distinct and independent of each other. There was no charter party to give it entirety, and the fact that the freight out was paid at the foreign port, shows that the voyage out terminated upon the arrival of the vessel there. If the voyage out and home had been considered one entire voyage, then the freight would not have been paid until the arrival of the vessel home. The insurance was upon two distinct and successive freights, and the valuation on the policy was of the aggregate value of each risk, and not both conjointly.

A policy of insurance only attaches upon the thing at risk, at the time of the loss. Here the outward freight was earned, before the cargo was on board, upon which the inward freight was to be charged; and therefore, while the outward freight was earning, the inward was not at risk. The two freights never could be at risk at the same time, which, if the position on the other side is correct, is attended with this advantage to the insurers, that whilst they are getting a premium on $1000 all round, cannot be exposed to a loss of more than $500; and should the freight out be equal to the whole amount of the policy, then they would be at no risk whatever upon the homeward voyage.

A valuation on freight is not that the vessel shall earn the amount by the voyage. It is merely a guide in case of loss, to measure the totality of the loss at the time. Here the loss was the freight upon the homeward voyage, the totality of which the parties agreed should be $1000. *Columbian Ins. Co. vs. Catlett*, 12 *Wheat*. 383. *Ib.* 394. *Whitney vs. Am. Ins. Co.* 3 *Cowen*, 210. *Crowley et al. vs. Cohen*, 23 *Serg. and Low.* 125. *Haven et al. vs. Gray*, 12 *Massa*. 71.

The test of the right to have the freight deducted depends upon the right of the assured to abandon. If the right of abandonment did not exist, then there can be no right to have a deduction, and as an abandonment must be of something at risk, and the freight out could not be at risk, after having been earned and received, there could be nothing to abandon. 1 *Phillips' Ins.* 382, 458

The policy in this case could not be upon the voyage round, because when the vessel sailed from Baltimore, no freight was engaged at the outward port, and there was nothing therefore but the freight out, upon which it could operate. It could only attach upon the risks separately as they came into existence, and not upon both at the same time, because both could not exist at the same time. If the valuation in the policy is not regarded as the standard in case of loss, what standard could be adopted in case the loss had occurred upon the outward voyage. Then it could not possibly be known what proportion the return freight would bear to the whole risk.

STEPHEN, Judge, delivered the opinion of the court.

The decision of the question involved in this case, depends upon the true construction of the contract of insurance entered into between the parties; and that construction must essentially depend upon their intention at the time the contract was made; for such intention, when it does not violate, or conflict with the principles of law, ought to be respected and carried into effect, as well in a contract of this description, as in all others which may be made in the various dealings and intercourse between man and man. What then is the legal effect, and operation of the contract of insurance in this case, in relation to the freight covered by it? Was it an insurance separately of the freight of each voyage marked out and described in the policy, at the valuation of $1000; or was it an insurance of the aggregate freights of both voyages at that valuation? Whether the one or the other of these constructions shall prevail is deeply interesting to the parties, whose rights are involved in the determination of this controversy, and therefore demands the careful and attentive examination of this court; and more especially as the principle involved in the decision of their rights, will have an important bearing upon the law of insurance generally, and the interests of the mercantile community at large. After the best consideration which we have been

able to bestow upon the subject, we have come to the
conclusion that the voyage in this case, is not to be considered
as one entire voyage from *Baltimore* to *Aux Cayes*, and at
and from *Aux Cayes*, with the privilege mentioned in the
policy, back to *Baltimore*; but that it is a case of separate
and distinct voyages, during the prosecution of which distinct
freights were at risk; to each of which, as they successively
came into existence, the valuation in the policy ought to be
applied.   It is admitted in the case stated, that freight to the
amount of $500 was earned on the outward voyage to *Aux
Cayes*, and received by the assured; and that the vessel there
took on board a full cargo, and was lost on her homeward
passage to *Baltimore*.   From this admission it would seem
to follow as a necessary consequence, that the vessel was not
engaged in one continuous and entire voyage for the whole
circuit, from *Baltimore* to *Aux Cayes* and back again to her
port of departure; and consequently that the risk assumed by
the policy was not an unbroken and entire risk; but that the
voyages were separate and distinct in their character, and
that separate and distinct freights were at risk during each
voyage; for it appears to be clear, that upon no other
hypothesis, than that the voyages were distinct, could freight
have been earned and received at the port of *Aux Cayes*,
where she first arrived.   Freight is a compensation received
for the transportation of goods and merchandise from port to
port; and is never claimable by the owner of the vessel until
the voyage has been performed and terminated.   The admis-
sion of the fact that the vessel earned freight, by the trans-
portation of the outward cargo to the port of *Aux Cayes*, is
an admission that the outward voyage there terminated; and
consequently that when she there took on board her home-
ward cargo, for the purpose of returning with the same back
to *Baltimore*, she was engaged in the earning of a new
freight, the right to which would have been consummated on
her safe arrival at that port.   If the voyages were separate
and distinct, the freights to be earned by the prosecution and
completion of them, must, we think, partake of the same

character; and the question then arises, could the policy attach and operate upon the freight to be earned by the completion of the second voyage, before the cargo was laden on board at the outward port, or as far as appears from the case stated, had even been contracted for.

We think it could not, because at the time the policy was executed, the assured had not such an interest in the freight, as would make it the subject matter of an insurance, according to the well established principles of the law. *In* 1 *Phillips on Insurance*, 52, in treating upon the subject of insurable interest in freight, the principle is stated to be, that "if the freight be derivable from the transportation of merchandise, the right commences when the goods are put on board; or at farthest, when a part have been received, and the rest are ready to be shipped," and in support of such principle, the author refers to the case of *Riley vs. The Hartford Insurance Company*, 2 *Con. Rep.* 373. So, in the same book and same page, he says, "the freight of goods laden, or to be laden, being insured, a part of the cargo was taken on board at *Gibraltar*, and the ship was proceeding towards the *Cape de Verd Islands*, with funds on board to purchase salt there to make up the cargo, when she was lost. It was held, that the insurable interest had commenced only in respect to the goods shipped at *Gibraltar*." From these cases, it appears, that in the case of an insurance upon freight, the assured had no right to call upon the underwriters for an indemnity, unless the goods have been put on board, or at least have been contracted for, and are ready to be put on board when the loss occurs.

In the case now pending before this court, when the contract of insurance was entered into, no part of the homeward cargo had been put on board, or contracted for, consequently the assured had not at that time such an interest in the freight to be earned in the homeward voyage, as could legally be made the subject matter of an insurance. In giving then a legal construction to this contract, the valuation in the policy must be understood to apply in the first instance, only

to the freight in which he then had an insurable interest, and that as to the freight on the homeward voyage from *Aux Cayes* to *Baltimore*, it was prospective in its operation, and could only attach upon the homeward freight, when the assured acquired an insurable interest therein. A premium was taken for the freight at a valuation of a *thousand dollars* for the voyage round, of course the policy covered both risks, and must, we think, be construed in such a manner, as to give it an operation, that will make it harmonize with the established principles of law. This can only be done by expounding it to be a contract of indemnity for the freights of each voyage, terminating in its operation upon the freight of the first voyage, upon the safe arrival of the vessel at *Aux Cayes*, and attaching upon the freight of the return cargo, so soon as the assured had acquired an insurable interest therein. Upon the earning of freight by the transportation of the outward cargo to its destined port, the policy had performed its office for that voyage, and then commenced its operation as a contract of indemnity upon the freight of the homeward voyage.

In a treatise on *Average and Marine Insurance* by *Stevens and Benecke*, 37, it is said " a question has arisen, whether a valuation of freight for a voyage consisting of successive passages, from and to successive ports of loading and discharge, is applicable to the aggregate freight of the successive passages, or to the freight pending at any one time. For example, freight is insured and valued on a voyage to the *West Indies and back*, and the ship earns freight outward, and is lost on the homeward voyage. Does the assured recover one half, or the whole amount insured in the policy? It was held in *New York* that he was entitled to recover the whole amount."

*Davis vs. Hallett*, 3 *Caine*, 16.—" In a case that arose in *Boston*, on an open policy on freight, for a similar voyage, in which the outward freight was earned, and the vessel then lost, it was decided by a referee skilled in insurance,

that the insurers was liable, for the whole amount insured by them. This was in conformity to the above case."

The case above referred to, of *Davis vs. Hallett*, was an insurance on the freight of the sloop *Hannah*, valued at $2000, at, and from *Philadelphia* to *Omoa and Gol fo Dulee*, and at, and from thence to *Philadelphia*. The vessel sailed on the voyage insured, and arrived in safety at *Gol fo Dulee*, having earned freight to the amount of $2000. She there took in a return cargo for *Philadelphia*, the freight of which was equal to $2000 more, and sailed on her homeward voyage, during which she was captured by a *British* man-of-war. This case would be identical with the case now pending before this court, but for two distinguishing features, which it is supposed mainly influence the decision of it. The freight at risk in that case, both upon the outward, and the homeward voyage, was fully equal to the valuation in the policy, and it was admitted, that the premium on the outward voyage only, would have been about one half of that paid. These, it is true, are circumstances, which might have had an influence upon the minds of the court, in the exposition which they gave to the policy in that case; but it by no means follows, we think, that the decision would not have been the same, in the absence of those circumstances.

*Kent*, Chief Justice, says, " in the present instance there was, when the vessel was captured, an inchoate freight attached, equal to $2000. There was some freight already earned, when the capture took place ; but the amount of it becomes immaterial, as the valuation in the policy precludes inquiry into the value; and this valuation is to be adhered to, if the case be fair and honest between the parties, notwithstanding events in the course of the voyage may render the loss even advantageous to the assured. It is sufficient, if there be freight at risk equal to the sum insured, when the loss happens, and that some freight has been already earned for the insured.

If we were to sustain an inquiry into the value of the

freight, it would be doing away the effect of the valued policy." Again he says—" To apportion the loss and gain in this case, so as to make the gain of one moiety of the outward freight enure to the insurer, and the loss of one moiety of the homeward freight to fall upon the insured, would be an arbitrary rule, and would not give the plaintiff his just indemnity. It would be changing the legal operation of this contract, and making it an insurance of one moiety only of the outward, and one moiety of the homeward freight; instead of an insurance to the amount of the valuation, on so much freight pending when the loss arose. The payment of the double premium is a pretty sure index to the intent of the parties, that the policy should attach on the outward or homeward freight, according to events. The policy was to be valid and operative as long as there was aliment to keep it alive." '

It is true that the judge relies upon the double premium as aiding in the construction of the contract, and as indicative of the intention of the contracting parties; but we do not think that it would be doing justice to the decision, to consider it as founded exclusively upon these considerations.

He says an apportionment of the loss and gain between the insurers and insured, would be an arbitrary rule, and would not give the plaintiff his just indemnity. It would be changing the legal operation of the contract, and making it an insurance of one moiety only of the outward, and one moiety of the homeward freight, instead of an insurance to the amount of the valuation on so much freight pending when the loss arose.

The policy was to be valid and operative as long as there was aliment to keep it alive. It must be borne in mind, that he was then deciding upon the case of a valued policy. That the valuation unless a fraudulent one, is always binding and conclusive upon the parties, and that unless it be a case of fraud, the valuation agreed upon estops the parties from looking behind it for the purpose of changing the legal

operation of the contract. In case of a claim for a total loss upon such policy, the only legitimate inquiry is, has such a loss occurred, and has it been occasioned by one of the perils insured against, while the policy was operating upon the subject matter insured by it. Upon any other principle of construction, it would be divested of all the attributes of a valued policy, and the door would be open to an inquiry, unwarranted by the solemn agreement of the parties, and which is only admissible in the case of an open one.

It would be subjecting the assured to all the delay, expense, and inconvenience, which the valuation in the policy was intended to prevent, and would be at war with the best established principles of the law of insurance.

If the title of the underwriters to the freight earned upon the outward voyage, is to be tested by the law of abandonment, it is clear beyond controversy, that they can establish no title to it, because an abandonment can only operate upon the property or thing saved, at the time the loss occurs, and not upon that which is safe, and no longer exposed to the perils insured against. In 1*st Phillips*, 356, it is said—" In regard to freight, as far as the freight insured has been earned, and become absolutely due, the contract of insurance has been satisfied. If freights between different ports successively, and becoming absolutely due at the several ports of delivery, are insured in one policy, and after one or more of the freights is earned, a total loss upon this interest takes place, an abandonment can have relation only to the freight pending at the time of the loss. In respect to the freights previously earned, they have either been paid to the insured, or his claim for them has become absolute, and thus have ceased to be exposed to the perils insured against. In respect to such freights therefore, the insurers are discharged, since all that they agreed in the policy to be answerable for has been accomplished. An abandonment accordingly, has no operation upon freight earned."

Several cases were referred to in the argument, for the purpose of aiding in the exposition of this policy, which we

do not deem it necessary to examine further to illustrate this subject, because we think that the construction given the policy by the court below was correct, and that their judgment ought to be affirmed.

JUDGMENT AFFIRMED.