# UNITED STATES FIDELITY AND GUARANTY CO.
## *vs.*
## FREDERICK TAYLOR.

*State Industrial Accident Commission: awards of—; surety's liability; recovery from principal; implied promise.*

T. was engaged in operating a number of automobiles in transporting the mail and passengers, and received from a surety company a compensation insurance policy, which was understood by T. and the Surety Company would only cover and protect T. and his employees engaged in this operation; subsequently T. engaged in road construction, and while so engaged one of his employees, B., was killed; B.'s widow filed a claim for compensation before the State Industrial Accident Commission, which, after a hearing, ordered that T. and the Surety Company pay compensation at $3.60 per week for eight years and funeral expenses in the sum of $75.00; an appeal was taken by T. and the Surety Company to the Superior Court of Baltimore City, which affirmed the decision of the State Industrial Accident Commission; the Surety Company paid the award pending the decision of the Superior Court and then instituted suit to recover from T. the amount paid to B.'s widow under the award of the State Industrial Accident Commission:

*Held,* that the Surety Company is not barred by the award of the Commission, but is entitled to recover from T. the payments it has made and is required to make by reason of the award.                                           p. 518

*Held, further,* that between the Surety Company and T. the policy did not include B., and the Surety Company is simply in the position of a surety for the compensation allowed by the Commission.                                      p. 521

*Held, further,* that if one is compelled, or is in a situation to be compelled, to pay the debt of another, as in the case of a

surety, and does pay it, the law implies a promise on the part of him for whom the money is paid, on which an action may be sustained, for in such a case it is not a voluntary but a compulsory payment.                                     p. 522

*Decided April 3rd, 1918.*

Appeal from the Circuit Court for Calvert County. (BEALL and CAMALIER, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*John B. Gray, Jr.,* and *Edgar Allan Poe* (with whom were *John B. Gray* and *Bartlett, Poe & Claggett* on the brief), for the appellant.

*L. Allison Wilmer* (with whom was *J. Frank Parran* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

While Charles E. Briscoe was in the employ of the appellee, who was engaged in road construction work in St. Mary's County, Md., he was killed. The appellant had issued to the appellee a compensation insurance policy which the appellant and the appellee understood did not cover and protect Briscoe, but his widow, Margaret Briscoe, filed a claim for compensation before the State Industrial Accident Commission, and after a hearing the Commission passed an order that the appellee, employer, and the appellant, insurer, pay to her, until the further order of the Commission, compensation at the rate of $3.60 per week, payable weekly, for the period of eight years from the 21st of July, 1915, and such further sum, not to exceed $75.00, as the widow had paid for funeral expenses. The appellee and the appellant appealed from the order and the award of the Commission, and the appellant further appealed independently and on its own behalf, to the Superior Court of Baltimore City, but that Court confirmed the decision of the Commission.

The appellant had paid the $3.60 weekly, up to the time of bringing this suit, and also $47.00 for funeral expenses, and it sued the appellee to recover the payments so made by it. There are five counts in the *narr*,—the first being for money paid by the plaintiff for the defendant at its request, and the other four being special counts. The defendant (appellee), in addition to the general issue pleas, filed a special plea to each of the five counts, but as the questions before us are presented by the rulings on the prayers and a demurrer to the plea to the fifth count, we will not set out the pleadings at length.

The theory of the plaintiff (appellant) is that, although by reasons of certain provisions in the Workmen's Compensation Law, which is now Article 101 of the 3rd volume of the Code, and in the policy issued by it in conformity with that law and the requirements of the State Industrial Accident Commission, it was liable to the widow of Briscoe under the award of the Commission, affirmed by the Superior Court of Baltimore City on appeal, it was not liable to the appellee, and hence is entitled to recover from him what it has paid by reason of the award of the Commission. It denies any attempt to impeach that award, but claims that, as it was not intended to insure such employees as Briscoe, and that was so understood by the appellee, he should be required to return to it what it has paid to Briscoe's widow, who was his only dependent.

The record shows that the appellee was about to have awarded to him a contract for road construction work in St. Mary's County, when an agent of the appellant called upon him and proposed to insure him in that company against loss on account of accidents to his employees under that contract. The appellee replied that his road construction work was not of such a hazardous nature as to require him, under the law, to take out insurance. The agent told him that he was satisfied that the work was such as to require insurance, but the appellee insisted that it was not, and said that he would not take out insurance for that, but he told the agent that he was the owner of a number of automobiles which he was operating

514     U. S. FID. & GUAR. CO. vs. TAYLOR.

Opinion of the Court.                    [132

in Calvert County, in transporting the mail and passengers, and that he would take a policy from the plaintiff company for protection against accidents to his employees in that enterprise. The premium was adjusted upon the basis of the number of employees of the defendant engaged in the automobile business, and was paid, and a policy dated January 20, 1915, was issued.

The appellee did not begin the road work until the following April. He testified that he did not think it was of such nature as to require him to insure, and had no intention when the policy was taken out, nor after he commenced the road work, of insuring against accidents to his employees on that work; and he thought he was not insured against accidents to such employees by the policy mentioned in the declaration until the decision of the Commission, but when the Commission and the Court said he was so insured he accepted the decision.

Briscoe was at the time he was killed at work on a gravel pit, used in connection with the road construction work, which seems to be covered in terms by section 32, sub-section 19, of Article 101, as an extra hazardous employment. In the policy the company agrees with the employer

"as respects personal injuries sustained by employees, including death at any time resulting therefrom, as follows:

"Compensation. 1. To pay in the manner provided by Chapter 800 of the Acts of the General Assembly of Maryland, 1914, and all amendments thereto (hereinafter called 'Maryland Workmen's Compensation Law') any sum due or to become due from the Employer because of any such injuries or death, and the obligation for compensation therefor imposed upon the Employer by such law," etc. "Liability. 2. To indemnify the Employer against loss by reason of the liability imposed upon the Employer by law for damages on account of such injuries or death."

"Employees Covered. 6. This policy shall cover all employees of the Employer, legally employed."

There are also certain conditions which the policy is subject to, amongst which are the following:

> "Condition A. The premium is based upon the entire remuneration earned during the term of the policy by all employees of the Employer * * * If there shall be any change in or extension of the Employer's trade, business, profession or occupation, the earned premium therefor shall be adjusted at the Company's manual rates respectively applicable thereto. If the earned premium thus computed is greater than the advance estimated premium paid, the Employer shall immediately pay the additional amount to the Company; if less, the Company shall immediately return the unearned premium to the Employer."

> "Condition M. The Employer, by the acceptance of this policy, declares the statements in items numbered 1 to 11, inclusive, in said Declaration to be true, except such as are declared to be matters of estimate only; and this policy is issued in consideration thereof and the provisions of the policy as respects its premium and the payment of such premium; provided, however, that nothing in this Condition and no default on the part of the Employer with respect to any of the provisions or conditions of this policy, shall in any way affect the right of any employee, or his dependents, to recover from the Company the compensation provided for in the Maryland Workmen's Compensation Law and intended to be insured hereunder."

In the declaration, which was made a part of the policy, there are eleven items numbered from 1 to 11, as referred to in Condition M. above. Item 3 is as follows: "Location of all factories, shops, yards, buildings, premises or other workplaces of the employer, by town or city, with street and number: *Calvert County, Maryland.*" Then under a column of "Divisions of operation" there are a number of classifications lettered from (*a*) to (*l*) inclusive. Opposite these are three columns for "Estimated payroll of employees for policy

term," "manual premium rate per $100 of employees' pay-roll," and "Estimated advance premium." The only one filled up is "(*g*) Chauffeurs and helpers, wherever engaged," and the figures 1200, 1.79, 21.48 are in the three columns just referred to. Item 4 states: "The estimated payroll as stated above. included the entire remuneration of whatsoever kind earned by all persons employed in the service of the employer in connection with the employer's trade, business, profession or occupation, as provided in Condition A. to whom remuneration of any nature in consideration of service is paid, allowed or due, except that the remuneration of officers of a corporation whose duties or practices do not expose them to any operative hazards of the business may be excluded." Item 9 is: "No operations of any nature not herein disclosed will be conducted by the employer, execpt as follows: *No exceptions.*" "Calvert County, Maryland," at the end of Item 3, and "No exceptions," at the end of Item 9 were the answers of the employer (italics ours).

We have thus set out at some length the provisions of the policy, including the conditions and declarations, which are a part of it, which seem to be most applicable to the questions involved in this case, but the provisions of the Maryland Workmen's Compensation Law are expressly made a part of the policy "so far as they apply to compensation for any personal injury or death covered by this policy while it shall remain in force"—being a part of paragraph 1 as to Compensation, quoted in part above. Under Section 15 of Article 101 of the Code, the employer is required to secure compensation to be paid his employees in one of the three ways: (1) By insuring in the State Accident Fund; (2) By insuring with a stock corporation or mutual association authorized to transact the business of the Workmen's Compensation Insurance in this State, or (3) With the approval of the Commission, insuring the payment of compensation himself. Ample provision is made for the protection of employees when the third plan is adopted, which was doubtless authorized for the benefit of railroads and other companies

or persons who employ a great many employees, and concerning whose ability to pay the Commission can readily determine. In this case the employer adopted the second plan. The form of such policy is approved by the Commission—indeed no company or association can enter into such policy of insurance until it obtains from the Insurance Commissioner of Maryland a license for the purpose, "and until the form of such policy shall have been approved by the State Industrial Accident Commission." Section 29 of Article 101.

This case is a very peculiar one and we have not been referred to any decision that is very apposite. So far as the liability of the appellant to the widow for the compensation is concerned, there can no longer be any question. That was determined by the Commission and affirmed by the Superior Court of Baltimore City—no appeal having been taken to this Court. In its opinion the Commission referred to the contention of the insurance company that the "coverage provisions" were limited by the "Declarations" of the employer contained in his application for insurance, which declared that he employed no other employees except chauffeurs and helpers, and that therefore only such employees were covered by the policy, and said: "If the rights of third parties were not involved we might accept this view as correct, but however the terms of the application and the declarations of the employer may affect the question as between the insurer and the employer, they can not affect the right of the injured employee, or his dependents, in case of death, to the security of payments of compensation stipulated in paragraph one of the policy, and this is so because of condition M. of the policy." After quoting Condition M. the opinion went on to say that "The proviso clause in this condition of the policy was inserted by the Commission for the express purpose of defeating any such contention as that now made by the insurance company, and we are of the opinion that it does have that effect, and that, notwithstanding the "Dec-

larations" of the employer, the policy is effective in securing the payment of compensation to which the employee, or his dependents, may be entitled, regardless of the statements or declarations made by the employer in his application for insurance."

That is practically the position now taken by the appellant, and after giving the matter thorough consideration we have reached the conclusion that the appellant is not barred by the award of the Commission, but is entitled to recover from the appellee the payments it has made and is required to make by reason of the award. There are two distinct obligations upon the insurance company—one to secure payment of the compensation to the employee, and the other to indemnify the employer against loss for the liability imposed upon him by law for damages on account of such injuries or death. By reason of the provisions of Condition M., the company can not rely on the statements of the employer in the items in the Declaration, so far as they affect the right of an employee, or his dependents, to recover compensation, but that ought not and does not prevent it from requiring the employer to live up to his declarations and the terms of the policy, in so far as the rights between them are concerned. As we have seen, by Item 3, he expressly said that the location of all of his work-places were in Calvert County and limited his operations to "chauffeurs and helpers—wherever engaged." The estimated pay-roll of the employer was with reference to that occupation and the premium was paid accordingly.

It is true that at the time the policy was issued the appellee had not commenced the road construction work in St. Mary's County, but he further declared in Declaration 9 that "No operations of any nature not herein disclosed will be conducted by the employer, except as follows: *No exceptions.*" (Italics ours.) That is in accordance with what was intended and what he believed, as he testified that he did not think that it was necessary to insure his employees engaged on the

road construction work, did not intend to do so, and thought that he was not so insured until the Commission held otherwise. But the Commission only held that he was insured so far as the rights of the employees were concerned, and it did not and could not change his rights as between the insurance company and himself—but it made the insurance company security for the compensation he had to pay. But the appellee contends that Condition A relieves him. In the first place, it might well be contended that the language, "If there shall be any change in or extension of the employer's trade, business, profession or occupation, the earned premium therefor shall be adjusted at the company's manual rates respectively applicable thereto" was only intended to apply to a change, etc., of the business named in the policy, and would not be applicable to some other business or occupation, in another county and not in any way connected with that mentioned in the policy. But at any rate if the earned premiums thus computed was greater than the advance estimated premium paid, the employer was required to pay it immediately. The evidence shows that the estimated payroll for the road construction work was very much more than for his automobile business, and it would be in a different classification. In the defendant's fifth plea he said that he had been ready and willing at all times since the decision of the Commission, and was still ready and willing to pay the earned premium, adjusted at the company's usual rates, as set forth in Condition A., but that would not answer. We know of no authority which would excuse an insured and authorize him to come in after a decision of the question and get the benefit of the policy by coming into Court and offering to pay, etc. These statements were very material and the agent of the company was in no wise responsible for them. The appellee cited Section 213 of Article 23 to show that no misrepresentations or untrue statement in an application, made in good faith, by the applicant, should effect a forfeiture or be a ground of defense, "unless such misrepre-

sentation or untrue statement relate to some matter material
to the risk." We have already said that these statements
were material, but beyond that we could not say that the
answer to Item 3 was a misrepresentation or untrue state-
ment of the facts as they existed when the policy was applied
for and obtained, and Item 9 had reference to the future. It
is only just to the appellee to say that we do not think he was
guilty of fraud or misstating facts. Unfortunately he did
not think that he was going to engage in an operation which
required insurance, and that is, of course, what Item 9 has
reference to, and the agent knew from him that he did not
intend to and would not take out insurance for the road
work. The agent did not withhold anything from him or in
any way impose on him. On the contrary, he told him he
thought he would have to take out the insurance and endea-
vored to get him to do so. It was not the intention of either
of them to cover that work with this policy, and it is only
because the Commission, affirmed by the Superior Court, has
found that it did cover it, in so far as the employees and
their dependents are concerned, that he and the company
were held. The long line of cases cited by the appellee,
including *Patapsco Ins. Co.* v. *Briscoe,* 7 G. & J. 293; *Md.
Ins. Co.* v. *Bossiere,* 9 G. & J. 121; *National Fire Insurance
Co.* v. *Crane,* 16 Md. 260; *A. & E. R. R. Co.* v. *Balto. Ins.
Co.,* 32 Md. 37; *Keystone Benefit Asso.* v. *Jones,* 72 Md.
363; *Globe Life Ins. Co.* v. *Duffy,* 76 Md. 293; *Dulany* v.
*Fidelity & Cas. Co.,* 106 Md. 17, and others, do not seem to
us to aid the appellee, for, in so far as they relate to the
intention of the parties, he testified most positively that he
had no intention of insuring the employees in the road work,
and there was no intention on the part of the appellant to
do so by this policy. The appellee's main trouble is that it
is conclusively shown, and not denied, that there was no inten-
tion of including such employees as Briscoe, or such work as
he was engaged on, and the policy clearly carried out that
intention, in so far as the appellant and appellee are con-

cerned, and is only effective for the benefit of the widow of Briscoe by reason of the award of the Commission, which expressly distinguished the liability to her from that to the appellee.

Without meaning in any way to criticize, or to express an opinion as to the correctness of the award of the Commission, as that is not before us for review, we can not hesitate to hold that as between the appellant and the appellee the policy did not include Briscoe, and the appellant is simply in the position of a surety for the compensation allowed by the Commission, as it is relieved from liability to the appellee for reasons we have stated. So far as the appellant and appellee are concerned, paragraph 6 must under the other provisions and the evidence in the case be construed to mean that "This policy shall cover all employees of the employer, legally employed in the business mentioned in the declarations, made a part of the policy." It may be well to add here with emphasis that this is a wholly different case from such an one as the *American Ice Co.* v. *Fitzhugh*, 128 Md. 382, where the question was whether the provisions of the Workmen's Compensation Law included such an employee as Fitzhugh. He was admittedly an employee of the Ice Company, as a driver of an ice and coal wagon, in the regular business of the company, which the insurance was intended to cover. There was no such question as there is here and this case must not be confounded with those in which the question arises as to whether an employee of an employer in the business intended to be insured is covered by the policy. That may often arise in cases under this law, but the question here is a wholly different one, as it was distinctly understood that this policy was not to cover the employees on the road work.

In view of what we have said, it is apparent that the appellant is entitled to recover. If it was not, then we would have the remarkable condition that an insurance company would be required to pay insurance which both the insured and the insurer agree was never intended to be paid, and neither of them understood or intended that the policy should

cover the insurance in question, and the peculiar part of it is that the only ground for the contention is the award, while the Commission making it distinctly said that it did not mean to hold that the policy was effective between the appellant and the appellee and sustained the award in favor of the third party by reason of the provisions in the policy and the law which, under their interpretation, entitled her to it.

In *Turner* v. *Egerton,* 1 G. & J. 430, CHIEF JUDGE BUCHANNA said: "Where one is compelled to pay the debt of another, he may recover against him in an action for money paid, etc., upon the promise which the law implies, as in the case of money paid by a surety on a bond, which is considered as paid to the use of the principal, and may be recovered in an action against him for money paid, etc." In *Baltimore* v. *Hughes,* 1 G. & J. 480, the same Judge said: "If one is compelled, or is in a situation to be compelled to pay the debt of another, as in the case of a surety, and does pay it, the law implies a promise on the part of him for whom the money is paid, on which an action may be sustained, for in such case, it is not a voluntary but a compulsory payment." See also 1 *Poe,* sects. 107-111, where the question is fully considered under the count for money paid. As there is such a count in the *narr.* it will not be necessary to discuss the special counts.

The first prayer of the plaintiff was properly rejected. That prayer, if good, would enable an insurance company to recover from the employer compensation paid by it in almost any case. It is altogether too general. The second is rather broad also. There may be cases in which the insurer and employer did not intend to insure some particular employee, not supposing he was covered by the law, but that of itself would not be sufficient to authorize the recovery by the insurer from the insured. If the policy is broad enough to cover all employees in the business or occupation which the policy is intended to cover, then merely because the insurer and employer thought that some particular employee or class of employees was not covered by the law, but the Commission and

the Court, on appeal decided the contrary, that would not be sufficient to relieve the insurer of its liability to the employer. The theory of the third and fourth prayers as we understand it, may be correct, but they do not sufficiently cover the case. It is for the Court to construe the policy and determine the meaning of the clauses relied on and not for a jury or for the Court, sitting as a jury. The appellee's second prayer, which was granted, left it to the Court, sitting as a jury, to construe the clause of the policy referred to. Then the provision at the end of the prayer makes it bad. It should have specifically referred to such statements as the appellee desired to submit to the consideration of the Court, sitting as a jury, and not require it to look through the pleas for the reasons the appellee had for his declarations, even if they be assumed to be good reasons.

The demurrer to the fifth plea should have been sustained. Readiness on the part of the appellee since the decision of the Commission was not sufficient, and the addition to the plea, that the plaintiff had knowledge at the time of the issuance of the policy that the defendant was engaged or about to be engaged in the road work, did not make it better. It may have had knowledge of the fact that the appellee intended to engage in such work, but it might well have assumed that if he intended to engage in hazardous work in another county he would take out a policy to cover that. We are not aware of any reason why a party having separate and distinct occupations, both of which require insurance under this law, could not take out two policies—each covering one of them and not the other.

It follows that the judgment must be reversed.

*Judgment reversed and new trial awarded,—*
*the appellee to pay the costs.*