## WESTERN CASUALTY & SURETY CO. v. THIBODEAUX et al.

### No. 13313.

United States Court of Appeals
Fifth Circuit.

July 13, 1951.

Fred B. Wagner, Brownsville, Tex., for appellant.

Dean B. Kirkham, Leslie S. Lockett and Ted M. Anderson, Corpus Christi, Tex., for appellees.

Before HUTCHESON, Chief Judge, and BORAH and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

The appellee, Mrs. Aubrey J. Thibodeaux, for herself and four minor children brought this action against the appellant in the State Court following the award of the Texas Industrial Accident Board denying the recovery of death benefits under the Texas Workmen's Compensation Statute for the death of her husband. It was alleged the decedent sustained accidental injuries resulting in death, while engaged in the scope of his employment, as an employee of the Texas Fisherman's Cooperative Association, Inc. The Association and its employees were subject to the provisions of the Compensation Statute. The appellant Surety Company removed the case to the Federal Court and brought in as a third party defendant the alleged employer, the Association. The appellant Surety Company denied that the deceased, Thibodeaux, was an employee, and, by way of special defense, asserted that he was an independent contractor, and, as against the third party defendant, averred that the Surety Company was entitled to recover over against the Association for such sums as it might be compelled to pay to the plaintiffs by virtue of its policy of indemnity issued to the Association, this, upon the ground that the policy was issued and procured as a result of the false representations made by the Association to the insurance company to the effect that the Association did not engage in hauling its products to markets and customers; that should it be

determined that the Association was so engaged, such business activities constituted a breach of the insurance contract and, therefore, entitled the insurance company to recover over from the Association. It was further asserted that the policy of Workmen's Compensation Insurance did not cover the Association for injuries sustained by employees engaged in long distance truck hauling, nor was it within the intent of the parties that the contract of insurance should provide such coverage; and, further, that the Surety Company would not have issued the policy in question if it had known the Association was engaged in trucking operations. Trial was by the Court without a jury. Judgment was awarded in favor of Mrs. Thibodeaux and her children and against the Surety Company in the amount of $7,673.42, and the Court denied the Surety Company any recovery over against the Association. The Surety Company in this appeal insists that the judgment in favor of the Thibodeauxs is erroneous because the evidence shows that the deceased was an independent contractor and not an employee and, further, that it was not shown the decedent received his fatal injuries in the scope of his employment. The complaint against the judgment denying recovery over against the Association by virtue of false representation is abandoned, but it is contended that the evidence being without dispute that neither the employer Association nor the insurance carrier defendant "considered the deceased an employee, there was no meeting of the minds of employer and carrier as to coverage of deceased" and, consequently, no insurance contract. It was further contended that even though Thibodeaux might have been an employee so that his beneficiaries are entitled to recover for his death, since such coverage was not within the contemplation of the contract and there was no agreement for compensation coverage to protect the Association from this liability, under the circumstances, the obligation of the Surety Company to respond by force of law, nevertheless, constituted a discharge of the Association's obligation on account of which it should be liable over to the Surety Company.

■ We consider first the attack upon the judgment in favor of the Thibodeauxs. There is no substantial dispute in the evidence. The question is whether this evidence supports the findings of the trial Court that Thibodeaux was an employee and not an independent contractor. The Association was formed in 1948 by a number of owners of shrimping vessels for the purpose of processing and marketing their catch. The process consists of removing heads from the shrimp and packing the shrimp in boxes, barrels or cartons in which they are iced. Some of the shrimp is marketed as green shrimp and other is frozen at quick freezing plants at Harlingen, Texas, and other places for storage. Frozen shrimp was sold and delivered to persons who were located in large cities such as New York, Chicago, St. Louis, Milwaukee and San Francisco. Thibodeaux was the owner of a large tractor-trailer insulated truck. Almost from the inception of the business, he and two other truckers began and continued to handle the deliveries of the shrimp for the Association. Under verbal contracts, by which Thibodeaux and the others agreed to, and did, have their trucks always available to the Association for hauling shrimp to the market designated by the Association, payment was made on the basis of so many cents per pound for the different hauls, based on the nature of the shipment and the destination. It is manifest that the agreement between the Association and the truckers was not definite and full. However, the evidence as to the conduct of the parties in discharge of it and related matters presents the circumstances of performance in detail. That, in some aspects, if viewed alone, features of the arrangement and performances could be said to indicate that the relationship of Thibodeaux was that of an independent contractor, must be conceded. However, upon consideration of the testimony as a whole, we find it sufficient to support the finding and conclusion of the trial Court that Thibodeaux was an employee of the Association and not an independent contractor. Since, in all but clear cases, the determination of whether the relationship is that of employer and employee or independent contractor is to be determined in each case from its particular facts,[1] and it is rarely, if ever, that any two cases involve identical facts, we refrain from reciting the evidence in full, but set forth some of the salient facts in the footnote.[2]

We find the evidence sufficient to support the finding of the trial Court that not only did the Association have the power and legal right to control, but did actually direct or control, the manner in which the work was performed by Thibodeaux. Under applicable Texas jurisprudence, this establishes the relation between the parties as that of an employer and employee.[3]

1. Madison v. Phillips Petroleum Co., 5 Cir., 88 F.2d 515; N.L.R.B. v. Steinberg, 5 Cir., 182 F.2d 850, 857; Texas Employers' Ins. Ass'n v. Owen, Tex.Civ.App., 291 S.W. 940; Southern Underwriters v. Samanie, 137 Tex. 531, 155 S.W.2d 359.

2. The decedent was directed and instructed by Nelson, General Manager and Vice-President of the Association, how to arrange the load in his truck to facilitate unloading and delivery. He was instructed to supervise the loading to the extent that he should permit only fresh shrimp to be loaded. On some occasions he was instructed to re-ice a shipment and to turn the boxes over. He was allowed to choose his route to market, but was expected to keep the management informed as to the route to be taken. He was instructed to supervise the count when the shipment was delivered; was the only person there to represent the Association's interest; was instructed to watch the sampling; and instructed as to what form of payment should be required and what disposition to make of it. Any time there was any controversy with the purchaser he contacted Nelson for instructions; drivers were expected to contact the Association before returning and bringing back any equipment they should be asked to haul. On some occasions the drivers were contacted enroute and instructed to withhold delivery for a couple of days until the market cleared up. The drivers were required to have relief drivers on some of the long distance hauls.

3. Clark v. Lynch, Tex.Civ.App., 139 S.W. 2d 294, (citing the leading authority of Cunningham v. International Railroad Co., 51 Tex. 503); Herndon v. Halliburton Oil Well Cementing Co., Tex.Civ. App., 154 S.W.2d 163; City of Waco v. Hurst, Tex.Civ.App., 131 S.W.2d 745;

The appellant contends that claimants failed to prove that decedent received his fatal injuries in the scope of his employment. It appears that Thibodeaux died as a result of his head being crushed by an elevator descending past an 18 inch unguarded opening in the elevator door, by which he was standing, and into which opening he apparently looked to ascertain if the elevator was operating. Whether he was proceeding on a part of his duties in connection with the purpose of his trip is not made to appear. The only evidence bearing on the event was presented by Nelson,[4] who was not present at the time the accident occurred, but went to the scene when notified shortly thereafter. Nelson testified that the decedent went to the Texas Frozen Foods, Inc. at Harlingen, on the premises of which he met his death, to deliver a load of fresh shrimp to be frozen. There is no contradiction of this testimony.

 In Hooper v. Great American Indemnity Co., 5 Cir., 102 F.2d 739, this Court stated, "The Workmen's Compensation Law should not be hedged about with strict construction, but should be given liberal construction to carry out its evident purpose. The cause of the injury is not restricted or confined to the exact duties prescribed for the employee. Whatever may be incidental to or connected with what the employee must do within the period of employment must necessarily belong to the employment," citing, 102 F.2d at page 740, numerous Texas cases as authority. Also in that case, the Court stated that the evidence showed without dispute that the decedent was a capable and conscientious employee and found, under the facts, that there was no room for presumption of infidelity in the performance of his duty in furthering his master's business. Nelson testified that the decedent in this case was a first class truckman handling produce and was "one of the best I have ever seen". In Casualty Reciprocal Exchange v. Johnson, 5 Cir., 148 F.2d 228, this Court held that acts essential to the life, comfort and convenience of an employee while at work are incidental to his service, and injuries sustained in their performance arise out of the employment and are compensable under the (Texas) statute. Numerous authorities are cited in support of this view. In that case an employee was shot and killed while going to get "a drink of water or to give orders to his helper". The shot was fired by a third person and was in no way related to the employment.[5] In the instant case it is not shown why the decedent was near the elevator door, nor what his purpose or intent was. From the testimony presented, it may be reasonably assumed that no living person possesses knowledge which would enlighten the Court on this point. However, it is shown that he was on the premises on the business of his employer, and while there was killed. The authorities cited and referred to above support the conclusion and judgment that the fatal injuries arose out of his employment.

We, therefore, consider the contention that the Surety Company should have been permitted to recover over against the Association the amount of the judgment awarded the Thibodeauxs. The Surety Company issued to the Association its Texas Standard Workmen's Compensation policy, which was once renewed. The policy in no wise attempts to limit the coverage of the employees of the Association. The Classification of Operations is: "Meat, Fish or Poultry Dealers—wholesale—N. P. D. with 2089 'Packing Houses'. Code 8021." By an endorsement attached, denominated "Automatic Coverage Endorsement", "It is agreed that the policy covers in addition to the business operations described in the Declarations any other business operations which the employer may undertake and premium therefor shall be adjusted in accordance with the general conditions of the policy at the rate or rates applicable to such operations." The policy also provided that "the obligations and promises of the company" to pay compensation to the employees shall not be affected by the failure

---

McCombs v. Stewart, Tex.Civ.App., 117 S.W.2d 869; Texas Employers' Ins. Ass'n v. Owen, Tex.Com.App., 298 S.W. 542.

4. Referred to in Footnote 2.

5. See also cases cited in Vol. 23, Texas Law Review, pp. 89, 90.

of the employer to do or refrain from doing any act required by the policy. The Surety Company caused an investigation of the operations of the Association and a visual inspection of the premises to be made. No express mention was made of trucks or transportation. The inspector saw trucks parked near the premises. It is true that the Association did not pay social security tax on Thibodeaux's earnings, nor was such compensation included on the payroll records. The trial Court found that there was no misrepresentation or concealment and that the mistake was an innocent one. It concluded as a matter of law that the policy issued covered all of the employees; that, under cited Texas cases,[6] it was not legally possible to issue a policy of Workmen's Compensation Insurance to protect only a part of the employees of a business and omit other employees of the same business, although recognizing that where a person had two separate businesses the law would permit compensation insurance for the employees of only one of such businesses. The Court further concluded that the manifest purpose of the Automatic Coverage Endorsement was "to automatically cover any and all operations of the employer so as to embrace any new classification or line of business engaged in."[7] The Court further found that in this statutory proceeding since all "rights exist only by virtue of the Workmen's Compensation Laws of Texas, the remedies therein provided for failure of the employer to pay premiums on his employees,—that is, to collect the amount which should have been paid in the event of an accidental or innocent omission, or to collect ten times the premiums that should have been paid in the event of a willful misrepresentation (Texas Revised Civil Statutes, Article 8309, Sec. 3a, Vernon's Ann.Civ.St. Art. 8309, § 3a)— are exclusive, and no right of indemnity or reimbursement as is sought by the defendant and Third Party Plaintiff, insurer, against the employer exists."[8]

◼ We think the conclusions of the trial Court are amply supported. Appellant concedes that under the Texas statute, and decisions applying it, coverage can not include certain employees in a single business and exclude others. We are not impressed by the contention that the policy would not have been issued had the insurer known the truck drivers were employees. It appears that there was no concealment or misrepresentation as to this fact. Indeed, the capacity of the truck drivers was not at all discussed. The failure of the insurer to ascertain the actual status of the drivers resulted from its failure to exercise diligence to learn the true facts. The insurer had ample opportunity to ascertain the status of the drivers when its State mana-

6. Federal Underwriters Exchange v. Walker, Tex.Civ.App. 134 S.W.2d 388; Bowman v. Traders and General Ins. Co., Tex.Civ.App., 208 S.W.2d 420; Lloyds Guarantee Assur. v. Anderson, Tex.Civ. App., 170 S.W.2d 312; Hartford Accident & Indemnity Co. v. Christensen, 19 Tex. 238.

7. "The policy has an Automatic Coverage Endorsement, which expressly covers 'any other business operations which the employer may undertake'. The very purpose of this endorsement is to automatically cover any and all operations of the employer so as to embrace any new classification or line of business engaged in or any expansion, no matter how extensive, of what nature, or how far-flung. Manifestly, 'other business operations which the employer may undertake' means and must necessarily embrace such hauling, trucking, or movement of commodities as the employer may undertake in what-

ever business he is engaged. There is no limitation. Therefore, defendant's contention is in direct conflict with the Automatic Coverage Endorsement, and the rights of the parties must be found within the terms of the policy and under the Texas Workmen's Compensation Act. The broad terms of the policy cover all operations and, therefore, include the transportation of the shrimp to market."

8. Citing and quoting from 50 Am.Jur. 'Statutes', p. 593. Section 596, as follows: " 'It is an established principle, if a statute creating a new right or cause of action where none existed before, also provides an adequate remedy for the enforcement of the right created, and the statutory remedy is not by its terms cumulative, the remedy thus prescribed is exclusive. In such case, such remedy must be pursued in the enforcement of the right to the exclusion of any other remedy.' "

ger issued the policy and its representative made his investigation. The State manager was advised that shrimp was packed for shipment, and Kennedy, the individual who made the investigation, testified that it was his duty to determine whether the Association was engaged in hauling, since this was a material element in considering the risk. He testified that he knew the Association was engaged in packing for shipment, saw the trucks nearby when he made his investigation, but does not claim that he inquired as to the mode of shipment and the status of the operators of the trucks. We think the present is clearly such a situation as is contemplated by the Texas statute, and that the recourse, if any, of the insurer, is the collection of an additional premium.

We have not referred to, because we do not reach, the constitutional question sought to be presented by the appellant. The two authorities relied upon by the appellant, Hartford Accident & Indemnity Co. v. Christensen, Tex.Sup., 228 S.W.2d 135, and U. S. Fidelity & Guaranty Co. v. Taylor, 132 Md. 511, 104 A. 171, are not controlling, nor in point so as to require a different conclusion from that which we have announced.

Our conclusions are strengthened by the terms of the policy [9] and the provisions of the Automatic Coverage Endorsement heretofore quoted. It is apparent that it was *intended* that all employees engaged in or connected with the operation of the business were to be included in the policy, unless specifically excluded. It cannot be plausibly maintained that truck drivers who haul the product to market are not engaged in operations necessary, incident or appurtenant to the non-descriptive classification stated in the policy.

The appellant fails to convince us of error in the judgment of the trial Court.

Judgment affirmed.

9. The policy provides that the premium is to be based on the entire remuneration earned "by all employees engaged in the business operations described in the Declarations together with *all operations necessary, incident or appurtenant* thereto, or connected therewith whether con-

ducted at such work place or elsewhere in connection therewith or in relation thereto * * * If any operations as above defined are undertaken by the Employer but are not described or rated in said Declarations, the Employer agrees to pay the premium thereon * * *."