JANES CONTRACTING CO. et al. v. HOME LIFE & ACCIDENT CO. et al.*

(No. 1345.)

(Court of Civil Appeals of Texas. El Paso. Nov. 16, 1922. Rehearing Denied Dec. 14, 1922.)

I. **Master and servant** ⬦➔383—Effect of breach of employer's covenant in policy under Compensation Act stated.

Stipulation in policy, issued to employer under Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), that no explosives will be made, stored, or used on the premises, constitutes a covenant of the employer with the insurer, breach of which, while not affecting liability of the insurer to an injured employee or his beneficiaries, gives insurer, compelled to discharge such liability, right to recover over against the employer; the injury being caused by such breach.

2. **Appeal and error** ⬦➔934(1)—In absence of findings all issues of fact assumed resolved against appellant.

Where no findings were filed by the trial court, it must be assumed that all issues of fact were resolved by it against the losing party.

3. **Reformation of instruments** ⬦➔45(14) — Finding against prohibition being in policy by mutual mistake warranted.

Relative to reformation of a policy issued to an employer under the Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), evidence *held* to warrant finding against claim that prohibition therein against use of explosives on the premises was incorporated by mutual mistake.

4. **Reformation of instruments** ⬦➔43—Written contract presumed to embody real intent.

A written contract prima facie is presumed to embody the real intention of the parties.

5. **Reformation of instruments** ⬦➔43 — Party presumed to have known contents of contract.

It is presumed that a party to a contract knew its contents.

6. **Evidence** ⬦➔590 — Interested witness need not be believed.

The trial court is not required to accept as true the testimony of a vitally interested witness.

7. **Master and servant** ⬦➔383—Rider on compensation insurance policy not retroactive when not purporting to be so.

A rider, authorizing blasting and providing for an increased premium attached to a policy issued under the Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), not purporting to be retroactive, does not protect the employer from a prior accident to an employé from use of explosive in violation of provision of the policy.

8. **Insurance** ⬦➔129—Insurer not estopped by local agent receiving a premium not called for by policy.

A local insurance agent has no implied authority to collect a premium not called for by the policy as originally written, and thus retroactively and by estoppel impose a liability for a loss theretofore sustained, and thus alter the fixed rights and liabilities of the parties;' Rev. Stat. art. 4961, being inapplicable.

9. **Master and servant** ⬦➔383—Certain matter held not a "change in employer's business" within compensation insurance policy provision as to adjustment of earned premium.

Use of explosives in sewer construction contrary to stipulation in policy issued to employer under the Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) to cover the business of "sewer building" is a mere detail of the work, and not a "change in or extension of the employer's business," within the stipulation of the policy that' in case of any such change the earned premium therefor should be adjusted and further payment made or unearned premium returned according to whether the advance estimated premium paid was too small or too large.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Change.]

10. **Master and servant** ⬦➔383—Compensation insurer held to have option to recover damages for breach of covenant of policy instead of increased premium.

Even if use of explosives contrary to covenant of policy, issued to employer under Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), be within stipulation of policy that in case of any "change in or extension of the' employer's business" the earned premium therefor shall be adjusted, and further payment made or unearned premium returned, according to whether the

---

⬦➔For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted January 31, 1923.

advance estimated premium paid was too small or too large, the insurer can waive recovery of the increased premium and recover the damage from breach of the covenant.

Harper, C. J., dissenting.

Appeal from District Court, Eastland County; E. A. Hill, Judge.

Suit by the Home Life & Accident Company against Mack Malone and others to set aside an award made by the Industrial Accident Board, the Janes Contracting Company, a partnership, and the members thereof being impleaded. From an adverse judgment the Janes Company and the partners appeal. Affirmed.

Jno. B. Howard, of Pecos, and Levy & Evans, of Ranger, for appellants.

Merritt & Leddy, of Dallas, and W. A. Shields, of Breckenridge, and Andrews, Streetman, Logue & Mobley, of Houston, for appellees.

HIGGINS, J.   On May 20, 1919, the Home Life & Accident Company issued to the Janes Contracting Company its "workmen's compensation and employers' liability policy" under the Workmen's Compensation Laws of Texas (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91). In the policy the insurer is designated as the company and the assured is designated as the employer. It was provided that the company would pay any sum, due or to become due, from the employer because of injuries or death and the obligation for compensation therefor imposed upon the employer by such compensation laws. Other provisions of the policy are as follows:

"Liability.

"II. To indemnify the employer against loss by reason of the liability imposed upon the employer by law for damages on account of such injuries or death, provided such loss is legally insurable under the laws of such state or commonwealth as are specified in item 3 of the declarations."

"Employees Covered.

"VI. This policy shall cover all employees of the employer, legally employed."

"This policy is subject to the following conditions:

"Basis of Premium.

"Condition A.  The premium is based upon the entire remuneration earned during the term of the policy by all employees of the employer, except the remuneration of any officers of a corporation whose duties or practices do not expose them to any operative hazards of the business. If there shall be any change in or extension of the employer's trade, business, profession or occupation, the earned premium therefor shall be adjusted at the company's manual rates respectively applicable thereto. If the earned premium thus computed is greater than the advance estimated premium paid, the employer shall immediately pay the additional amount to the company; if less, the company shall immediately return the unearned premium to the employer."

"Condition J.  The employer, by the acceptance of this policy, declares the statements in items numbered 1 to 12, inclusive, in said declarations to be true, except such as are declared to be matters of estimate only; and this policy is issued in consideration thereof and the provisions of the policy as respects its premiums and the payment of such premium: Provided, however, that nothing in this condition and no default on the part of the employer with respect to any of the provisions or conditions of this policy, shall in any way affect the right of any compensation provided for by law and intended to be insured hereunder."

Under the head of "Declarations" it was stated:

| "Kind of Business, Trade, Profession or Occupation. | Estimated Pay Roll for Policy Term. | Premium Rate per $100 of Employees' Pay Roll. |
| --- | --- | --- |
| Sewer building—Maximum depth 7 feet at any one point (not available for division of pay roll) 6302 | Monthly Pay Roll | 5.85 |

"The minimum premium for this policy shall be $67.00. Estimated advance premium, $67.00.

"Item 4.  The estimated pay roll as stated above includes the entire remuneration of whatsoever kind earned by all persons employed in the service of the employer in connection with the employer's trade, business, profession or occupation, as provided in condition A, to whom remuneration of any nature in consideration of service, is paid, allowed or due except that the remuneration of officers of a corporation whose duties or practices do not expose them to any operative hazards of the business may be excluded."

"Item 6.  No explosives will be made, stored or used on premises, except as follows: No exceptions."

"It is hereby understood and agreed, that on or before the 10th day of each calendar month, beginning with the month next after the issuance of this policy and ending with the month next after the policy period as therein described, the assured shall state to the company in writing, upon blanks furnished for that purpose, the amount of compensation earned by his employés during the preceding calendar month, or such part thereof as is within the full policy period, and shall on demand pay to the company the entire premium earned upon such compensation at the rates named in the policy.

"The sum of sixty-seven & no/100 dollars ($67.00) mentioned in this policy as a deposit only, which must be paid on delivery of the policy, and which shall be credited against the premium due in respect of the last month of this insurance."

On August 20, 1919, James Malone, an employee of the Janes Contracting Company, was killed while engaged in sewer con-

struction work at Ranger, Tex. His death was proximately caused by an explosive being used in the work. Thereafter Mack Malone and Eliza Malone, the surviving father and mother of James Malone, and sole beneficiaries of the deceased, filed their claim for compensation before . the Industrial Accident Board, and on the 19th of February, 1920, that board made an award in their favor against the Home Life & Accident Company, directing it to pay to the said surviving parents of James Malone the compensation of $15 per week for 360 weeks, less the fee allowed their attorney for his services. Thereafter the Home Company filed the present suit in the district court of Eastland county against Mack and Eliza Malone and their attorney to set aside the award made by the Industrial Accident Board.

The Malones set up the issuance of the policy of insurance by the insurance company to the Janes Contracting Company and the death of James Malone during the term of the policy as a result of injuries received by him as an employee of the Janes Company and asked judgment against the insurance company for $5,400, covering the maximum compensation for $15 per week for 360 weeks from the date of the injury to the deceased.

. By supplemental petition the Home Life & Accident Company impleaded the individual members of the Janes Contracting Company, a partnership, setting up that the death of the deceased was due to the use of explosives by the Janes Contracting Company in the conduct of their business, contrary to the express provisions of the policy which it had issued to the contracting company, quoting item 6 of the policy prohibiting the use of explosives; that the use of such explosives breached that provision of the policy above indicated and damaged it in whatever sum it would be required to pay to the beneficiaries of the deceased under the Workmens' Compensation Law, and prayed for judgment over against all of the members of such partnership for such sum.

The answer of the Janes Contracting Company to the cross-action of the Home Life & Accident Company is lengthy, and need not be detailed, as the nature of the defenses set up is disclosed by the questions presented and ruled upon in the opinion.

Upon trial before the court without a jury it was agreed between the Home Life & Accident Company and the Janes Contracting Company that James Malone, while in the employ of the Janes Company in the discharge of his duties, and while engaged in excavation and construction work, was killed by an explosion of dynamite then being used by the Janes Company in blasting rock, and that the Home Life & Accident Company was liable to Mack and Eliza Malone under the terms of the insurance policy, and

that a judgment might be entered in their favor against the Home Life & Accident Company in the sum of $3,500, leaving the issue to be litigated whether the Janes Company were liable over to the Home Life & Accident Company, and that such agreement should not in any manner affect that issue, that the same should be tried and determined as if Mack and Eliza Malone had recovered judgment against the Home Life & Accident Company on trial of the issue.

Judgment was rendered in favor of Mack and Eliza Malone in accordance with such agreement, and upon the issue between the Home Life & Accident Company and the Janes Company judgment was rendered in favor of the Home Life & Accident Company for $3,500 against the members of the Janes Company, who appeal therefrom.

No findings of fact and conclusions of law were filed by the court below.

It is shown by the evidence that the premium rate, where explosives are used, is materially greater than where they are not used, namely, $20.29 per $100 of employees' pay roll, instead of $5.85, as the policy was written, and that the minimum premium was $211, instead of $67.

So far as we can ascertain, there is no case presenting a state. of facts such as is here shown. Counsel for appellee cite U. S. F. & G. Co. v. Taylor, 132 Md. 511, 104 Atl. 171, which is in some respects similar, but not altogether in point.

[1] Construing the policy as it was written, the stipulation that no explosives would be made, stored, or used on the premises constituted a covenant upon the part of the Janes Company with the Home Company that such explosives would not be so made, stored or used. This covenant affected only their rights inter sese and in no wise affected the rights of employees of the Janes Company and their beneficiaries to compensation as provided by law. The covenant was breached by the Janes Company, and as a result thereof a liability imposed upon the Home Company in favor of Mack and Eliza Malone which the company has been compelled to discharge. The Home Company therefore would have the right to recover over against the Janes Company the damage thus sustained by the breach.

[2-6] The head of the firm of the Janes Contracting Company and the member who procured the issuance of the policy testified that he intended to obtain a policy which would permit blasting, and supposed that the policy permitted it; that he did not examine it, but supposed it was permitted. In a proper case a policy of insurance will be reformed so as to embody the real agreement between the parties, but it is not here contended that by fraud or accident the policy failed to reflect the true agreement. It is, however, asserted that the policy should be

reformed because by mutual mistake the use of explosive was prohibited. But all issues of fact, it must be assumed, were resolved by the court against the appellants. The evidence upon this phase of the case justifies such an adverse finding. For a written contract, prima facie, is presumed to embody the real intention of the parties (Ins. Co. v. Hill [Tex. Civ. App.] 127 S. W. 283), and it is presumed that a party to a contract knew its contents (Railway Co. v. Dwyer, 75 Tex. 572, 12 S. W. 1001, 7 L. R. A. 478, 16 Am. St. Rep. 926). See, also, in this connection Ætna Ins. Co. v. Holcomb, 89 Tex. 404, 34 S. W. 915.

Janes was a vitally interested witness, and the court was not required to accept his testimony as true, and there are other facts and circumstances which warrant an adverse finding upon the issue of mutual mistake. A circumstance which particularly impeaches the testimony of Janes and the insurance agent Stockman upon the issue of mistake is the fact that the pay roll of the employees engaged in blasting was not included in the pay rolls submitted until long subsequent to the death of Malone, and no effort made to pay the increased premium until long after the accident. The judgment of the court below cannot be set aside upon the theory that by mutual mistake the prohibition against the use of explosives was incorporated in the policy. The first and fifth propositions advanced by appellant are therefore overruled.

[7] On August 30, 1919, a rider was attached to the policy, which authorized blasting, and provided for an increased premium. In effect, it is contended that this indorsement related back to the date of the policy and protected appellant. But upon its face the rider does not import to be retroactive, and it has no such effect.

[8] By the third and sixth propositions it is contended that the appellee is estopped by the payment to its agent Stockman of the increased premiums, based upon the pay rolls of the employees engaged in blasting operations. The pertinent facts in this connection are: Shelton & Ames, of Houston, were general agents for the Home Company. Cravens & Cage, which afterwards became the firm of Cravens, Dargan & Roberts, of Houston, were general agents for the Western Indemnity Company. Ralph G. Stockman was a local insurance agent at Ranger, Tex., for the Western Indemnity Company. He had no connection with appellee. Prior to the issuance of the policy L. M. Janes was in Houston. He called upon Cravens & Cage and informed them that he had obtained a sewer contract at Ranger, and desired them to write the insurance for them. Cravens & Cage referred him to their local agent, Stockman, and advised that it must be handled through him. Cravens & Cage wrote Stockman, and the latter subsequently called upon Janes in Ranger concerning the matter, and arranged to write a policy covering sewer construction. As a matter of fact the Western Indemnity Company which Stockman and Craven & Cage represented did not write insurance covering sewer construction, but Cravens & Cage wrote Stockman they had a brokerage business with appellee, and Cravens & Cage sent the policy in question to Stockman, who in turn delivered the policy to the bookkeeper of the Janes Contracting Company. At the time it was delivered Stockman collected the minimum advance premium of $67. This he remitted, less his commission, to Cravens & Cage, who in turn remitted, less their commission, to Shelton & Ames. All subsequent collections and remittances were made in the same manner. The blanks furnished by appellee to make out the monthly pay rolls were sent by Cravens & Cage to Stockman, who delivered them to the Janes Company. Upon these blanks the Janes Company would make reports showing the amount of their pay rolls, and would deliver same to Stockman, with the monthly premium. These pay roll reports would accompany Stockman's remittances to Cravens & Cage. Subsequent to December 31, 1919, the Janes Contracting Company submitted to Stockman a pay roll report which included the compensation of employees engaged in blasting from May 16, 1919, to December 31, 1919, and paid to Stockman the proper premium based thereon. Stockman forwarded the premium to Cravens & Cage. They declined to accept the premium for the increased hazard incident to the use of explosives covering the period previous to the date of the abovementioned rider of August 30th, and in a subsequent monthly adjustment of their accounts with Stockman gave him credit therefor. Stockman, however, has not refunded same to the Janes Contracting Company.

Upon this state of facts it is contended that Stockman is the agent of the Home Company, and the payment thus made to said agent and accepted by him estops the Home Company in the premises. It may be conceded for the purposes of this case that, as respects the policy and the collection of the proper premiums, Stockman became the agent of the Home Company. Article 4961 R. S. Wagner v. Ins. Co., 92 Tex. 549, 50 S. W. 569; United Moderns v. Pike (Tex. Civ. App.) 76 S. W. 774; Ins. Co. v. Wandell (Tex. Civ. App.) 195 S. W. 289.

But the facts in those cases were radically different. In each of them the premium had been collected, transmitted to the insurer, and retained by it. That was all done before any liability had been imposed upon the insurer by a loss occurring under the policy, and the acts of the agent in the premises were within the actual or apparent

scope of his authority. Here the increased premium was not paid until long subsequent to the loss under the policy, the rights of the parties with respect thereto fixed, and in collecting and retaining the increased premium at that date the agent was not acting within the scope of his actual authority. To hold that a local agent has implied authority to collect a premium not called for by the policy as originally written and thus retroactively and by estoppel impose a liability for a loss theretofore sustained, and thus alter the fixed rights and liabilities of the parties, would be wholly unwarranted. In our opinion such a ruling would be unsupported by justice or reason.

[9, 10] The fourth proposition is as follows:

"Although the policy as originally written classified appellants' business as that of sewer building with the premium rate per $100 of employees' pay roll of $5.85, yet the policy contained a provision that if there should be any change in or extension of the employer's trade, business, profession, or occupation, the earned premium therefor should be adjusted at the company's manual rates respectively applicable thereto, and if the earned premium thus computed should be greater than the advance estimated premium paid, the employer should pay the additional amount to the company, and if less the company should return the unearned premium to the employer. The use of blasting if not included within the classification of sewer building was merely a change in or an extension of appellants' trade, business, profession or occupation within the meaning of said policy, and by the terms of said policy the liability of appellants and the rights of the respective parties to the contract of insurance under such circumstances were fixed by the terms of the policy itself to be an adjustment of the premium, by reason of which said Home Life & Accident Company is restricted to the exclusive remedy of collecting additional premiums arising from the use of blasting."

This proposition is predicated upon condition A of the policy above set forth. The policy was written to cover "sewer building," and the use of dynamite in constructing the sewers was merely a detail of the work. It was in no sense a "change in or extension of the employer's trade, business, profession or occupation." But if this stipulation is applicable, then we are of the further opinion that after the breach of the covenant against the use of explosives and the consequent imposition of liability upon the insurer to the dependents of James Malone the insurer would have two available rights and remedies, viz.: It could waive the damage resulting from the breached covenant, and recover the increased premium, or it could waive the recovery of the increased premium and recover the damage resulting from the breach.

The seventh proposition presented as fundamental error is without merit, in view of the corrected transcript shown upon certiorari.

Finding no error, the judgment is affirmed.

HARPER, C. J. (dissenting). It may be that the trial court had no jurisdiction to consider the question of lump sum settlement, since the Industrial Accident Board had not first passed upon this question, and approved it. Article 5246—33, V. S. Employers' Indemnity Corporation v. Woods (Tex. Com. App.) 243 S. W. 1085. If the court had no jurisdiction to render a lump sum judgment for the Malones, then a judgment over against the Janes Contracting Company cannot by this court be sustained.

I am of the opinion that appellants' first and fourth propositions are well taken. "By the terms of the policy the Workmen's Compensation Law, Act March 28, 1917, was made a part of same." There was no provision for forfeiture. This act, article 5246—84 thereof, provides that such insurance companies as appellee may issue such policies to employers, and upon doing so the latter is qualified the same as if he became a subscriber to the Industrial Accident Association of Texas. The record shows that this policy was written upon verbal application. No claim of misrepresentation; so, if the Janes Contracting Company had paid the proper premiums by so doing, the insurer became liable. The policy provides that, if a less premium has been paid than the class of work engaged in by employees calls for, the insurance company may collect the excess, and likewise, if the employer pays more than the law requires, he may likewise recover it back. The law contains the same provisions as to the association. The evidence being uncertain as to whether full premium has been paid, the case should be reversed, with instructions to the trial court to determine that question alone; if paid, then judgment should be entered for Janes Contracting Company, if not paid theretofore, the latter be given reasonable time within which to pay to save the insurance.

The fourth proposition is likewise sound. The policy contains the provision that—

"If there should be any change in or extension of the employer's trade," etc., "the earned premium therefor should be adjusted at the company's manual rates respectively applicable thereto."

Then this provision in the policy substantially follows the statute above quoted as to proper adjustment of the premium.

Statutory provisions become a part of the policy, and bind both parties. Life Ins. Co. v. Hopkins (Tex. Civ. App.) 219 S. W. 254.

An insurance policy will be construed strictly against the insurer, and in case of any doubt, ambiguity, or uncertainty in its terms it will be resolved in favor of the in-

sured. Ocean A. & G. Cor. Lim. v. Northern Trac. Co. (Tex. Civ. App.) 224 S. W. 212.

For the reasons assigned I enter my dissent. The motion for rehearing should be granted, and the cause reversed, with instructions to the trial court to inquire into the fact whether or not the proper premium to cover blasting had been paid, the record here not being conclusive upon this question; and, if paid, judgment should be rendered for defendants; if not, they be given an opportunity to pay.