(No. 17938.—Judgment reversed and award set aside.)
JOHN KELLY *et al.* Plaintiffs in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(CHARLIE SEWARD, Defendant in Error.)      *Opinion filed June 22, 1927.*

1. WORKMEN'S COMPENSATION—*meaning of the words "usual course" of business, in section 5 of Compensation act.* In section 5 of the Compensation act, excluding from the act employees not engaged in the usual course of the employer's business or trade, the words "usual course" mean the general, ordinary, customary, habitual or common course.

2. SAME—*when employee is not engaged in usual course of employers' business.* Parties engaged in the implement business and who also conduct a blacksmith shop and garage are not liable, under the Compensation act, to an employee temporarily engaged in hauling crushed rock to a cemetery, which the employers undertook to do for the officers of the cemetery corporation, largely as an accommodation and practically at cost, where the truck used for such hauling was kept by the employers for use in delivering implements to customers and was not regularly used in the business of hauling for others.

WRIT OF ERROR to the Circuit Court of Ford county; the Hon. FRANK LINDLEY, Judge, presiding.

M. H. SCOTT, for plaintiffs in error.

SCHNEIDER & SCHNEIDER, for defendant in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Charlie Seward, by an application filed with the Industrial Commission, made claim for compensation for an accidental injury suffered while he was employed by John Kelly, Peter Kelly and Joseph Kelly. The arbitrator awarded Seward $9.50 per week for 24 weeks, the period of temporary total incapacity for work, and a like sum per week for 87½ weeks for seventy per cent permanent partial loss of the use of the left foot. The award of the arbitrator was approved by the Industrial Commission. On review by writ of *certiorari* the circuit court of Ford county on June 12, 1926, confirmed the decision of the commission. Upon the petition of the respondents this court awarded a writ of error, and the record is here for a further review.

Plaintiffs in error, John, Peter and Joseph Kelly, conduct a blacksmith shop and garage, and also a retail implement business, in Piper City, in Ford county. The blacksmith shop and garage occupy a building constructed of cement blocks. The machinery in this building consists of forges, an emery wheel and a trip-hammer, all operated by an electric motor. Imbedded in the ground in front of the garage is a gasoline tank, from which motor vehicles are served. About ten or fifteen feet from the blacksmith shop, and separated from it, is a frame building in which plaintiffs in error carry on their implement business. In connection with this business they have a truck, which is used to deliver implements to customers. Plaintiffs in error have used this truck to haul a load of steel for a bridge company and a few loads of corn for two farmers, but they generally refuse to do hauling and are not engaged in that business. The accounts of the blacksmith shop and gar-

age on the one hand, and of the implement business on the other, are kept separately. Shortly prior to May 10, 1923, the officers of a local cemetery had five car-loads of crushed stone on track at Piper City and desired the stone hauled to the cemetery to improve its roads. They applied to the plaintiffs in error, who, largely as an accommodation, agreed to haul it practically at cost. John Kelly employed Seward to assist him in shoveling the rock from the railroad cars to the truck and in spreading it on the ground after it was dumped from the truck at the cemetery. Kelly, it was understood, would drive the truck. Seward's employment was limited to his part in hauling the stone, and that work would not bring him nearer than two blocks from the places of business of plaintiffs in error. His wages were fixed at four dollars per day. Kelly and Seward began to haul the stone on May 10, 1923. Late in the afternoon of that day they had reached the cemetery with a load, and to discharge it one end of the body of the truck was raised by operating a mechanical device for that purpose. Seward stood on the frame of the truck and assisted in lifting its body. The cable broke and the body of the truck fell on his left ankle, breaking the small bone and injuring the larger one. He was taken first to one hospital and then to another, and was treated at the latter until May 25, 1923, when he left. On June 9, 1923, he returned to the second hospital and the cast on his ankle was removed. The expense of the medical, surgical and hospital services was defrayed by plaintiffs in error. In the summer of the same year Seward was employed by a farmer, for whom he cut about forty acres of oats, pitched hay and assisted in threshing and hauling grain. For this work he received the prevailing wages. Later in the year he returned to a former employer, for whom, as long as the weather permitted, he carried and laid brick, shoveled dirt, dug man-holes, rolled tiles, and did practically every kind of work required in laying sewers. This employer testified that Seward did his

work as efficiently as he had done work of the same character prior to the accident and that he received the same wages therefor. Early in 1924 Seward was engaged in shoveling dirt, gravel, crushed rock and sand, setting forms, feeding a concrete mixer, and rolling and handling tiles weighing from 300 to 400 pounds each and letting them down into a trench by means of a derrick. He was employed whenever there was work to do, and his wages were from four to five dollars per day.

Plaintiffs in error make the contention, among others, that the employment of Seward for the particular purpose stated did not bring the parties within the provisions of the Workmen's Compensation act, and that Seward cannot for that reason recover compensation under the act. The pertinent provision of section 5 of the Workmen's Compensation act effective when Seward suffered the injury, and still in force, reads: "The term 'employee' as used in this act, shall be construed to mean * * * every person in the service of another under any contract of hire, express or implied, oral or written, * * * but not including any person who is not engaged in the usual course of the trade, business, profession or occupation of his employer," etc. (Cahill's Stat. 1925, pp. 1181, 1182.) Service in the usual course of the employer's trade, business, profession or occupation is a prerequisite to compensation for an accidental injury. The word "usual" is defined in Webster's New International Dictionary: "Such as is in common use; such as occurs in ordinary practice, or in the ordinary course of events; customary; ordinary; habitual; common." The definition of the word in the Century Dictionary is: "In common use; such as occurs in ordinary practice or in the general course of events; customary; habitual; common; frequent; ordinary." The usual course of a business, therefore, is its general, ordinary, customary, habitual or common course. Seward was hired solely to assist in hauling the crushed stone from the railroad cars

to the cemetery. His employment was temporary and was in no way connected with the conduct of the blacksmith shop and garage or the implement business of plaintiffs in error. The work he was hired to perform and did perform was outside of the usual or regular course of his employers' businesses. His employment was a mere occasional and incidental contract made for a particular purpose. Hence he was not engaged in the usual course of the business of his employers, and the injuries for which he makes claim are not compensable under the Workmen's Compensation act. *Berry Co.* v. *Industrial Com.* 318 Ill. 312.

The judgment of the circuit court is reversed and the award of the Industrial Commission is set aside.

*Judgment reversed and award set aside.*