CONSTITUTION INDEMNITY CO. v.
SHYTLES et al.
No. 5786.

Circuit Court of Appeals, Fifth Circuit.
Feb. 25, 1931.

Rehearing Denied March 30, 1931.

Hobart Price, Robert B. Holland, and Touchstone, Wight, Gormley & Price, all of Dallas, Tex., for appellant.

Love, Thomas & Gray and E. E. Clack, all of Dallas, Tex., for appellees.

Before BRYAN and FOSTER, Circuit Judges, and HUTCHESON, District Judge.

HUTCHESON, District Judge.

Appellant, having been cast in the court below in an action brought to recover under the Workmen's Compensation Law of the state of Texas for the death of the husband of appellee, appeals from the verdict and judgment rendered against it.

Only two exceptions were taken at the trial, one to the action of the court in excluding evidence as to the compensation rate applicable to commercial aviation; the other to its action in refusing appellant's motion for an instructed verdict.

The errors assigned on this appeal spring from and are grounded upon these two exceptions. They present only two points of law: (1) That the deceased, whose employment was that of manager of the Majestic Theater of Fort Worth, Tex., having come to his death in an airplane accident while flying to San Angelo on an authorized mission to advertise his theater, was not an employee covered by the Workmen's Compensation Law of the state of Texas, but one excepted out of the statute, as "one whose employment is not in the usual course of the trade, business, profession or occupation of his employer." The second point presented is that, if there was an issue of fact as to whether the deceased was covered by the policy, appellant ought to have been permitted to show the rate applicable to commercial aviation.

Disposing first of the exception to the evidence, we think it entirely plain that the offered evidence was rightly excluded.

Whether an employee is covered by a compensation policy is determined by the statutes of the state, the terms of the policy, and the general nature of his employment, and not at all by the question of whether the particular thing he was doing at the time of his injury was more or less hazardous, and, if customarily engaged in, would have been

442

subject to a higher rate of premium than the policy rate.

A construction of the Workmen's Compensation Law which would put a workman engaged in the business of his employer now within and now without the coverage of the policy according to the changing hazards of the particular tasks upon which he might from time to time be engaged, because of the difference in premium rates applicable to the different classes of work customarily engaged in, would be, not only unworkable, but intolerable.

█ This question of premium is a matter between the insurance company and the employer. The policy in this case provided for (see Record, p. 40) the final adjustment of premium, and it is settled law in this state that the question of extra hazard in the work being performed at the time of the injury and the premium applicable thereto is not a material inquiry, where the employee sues in a compensation case; the only material question there being whether the plaintiff was at the time of his injury an employee within the terms of the statute and the policy, and about the business of his master. Sheek v. Texas Co. (Tex. Civ. App.) 286 S. W. 336, 337; Standard Accident Ins. Co. v. Arnold (Tex. Civ. App.) 1 S.W.(2d) 434; Janes Construction Co. v. Home Life & Accident Co. (Tex. Civ. App.) 245 S. W. 1004; Georgia Casualty Co. v. Gibson (Tex. Civ. App.) 11 S.W.(2d) 191.

Turning to the first question, whether the deceased was an employee under the act, and his injury originated in and about the business of his employer; while at first blush it presents more difficulty in its solution, we believe that a correct understanding of the applicable law and the precise facts of this case will show that the difficulty is more apparent than real.

The Workmen's Compensation Law of Texas devotes its concluding article 8309 (Rev. St. Tex. 1925) to definitions and general provisions. Of those the important ones to be considered here are contained in section 1, art. 8309:

Section 1: "An 'employee' shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written * * * except one whose employment is not in the usual course of trade, business, profession or occupation of his employer."

Second subd. 4 after excluding certain injuries not material here, provides: "But shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

The policy, among other things, provides: "It is agreed that all of the provisions of each Workmen's Compensation Law covered hereby shall be and remain a part of this contract."

It also provided, under "Operations and Work Places Covered": "This agreement shall apply to such injury so sustained by reason of the business operations described in said Declaration which for the purpose of this insurance, shall include all operations necessary, incident or appurtenant thereto, or connected therewith, whether such operations are conducted at the work place defined and described in said Declarations or elsewhere in connection with, or in relation to, such work places."

Under the heading "Declarations" in the policy, it is provided: "This policy is hereby extended to cover injuries sustained by any such employee while engaged in the services of the assured anywhere in the United States." Again: "The obligations of this policy are hereby declared to be the direct obligation and promise of the company to any injured employee covered hereby."

█ The undisputed evidence in this case establishes that the injury from which the deceased died originated in the work and business of his employer, and while he was engaged in and about the furtherance of his employer's affairs and business.

The facts are all one way on this point. They show that the deceased was employed by the Interstate Amusement Company, an operator of a chain of moving picture houses, as manager of its Majestic Theater in Fort Worth, Tex. That as such manager it was his duty to operate the theater successfully, that is, to bring as much trade to it as possible, and, in doing so, the scope of his activities as manager was not limited or confined to any particular section.

In the performance of such duties it had been his custom and practice for some time to attend various civic activities in various sections of the state wherever he might be sent by the theater in order to advertise and exploit it, and this was the custom, not only on the part of the Majestic Theater at Fort Worth, Tex., but of other theaters over the country, in order to create good will and pro-

mote theater patronage, special efforts being made in the Fort Worth trade territory in West Texas. The deceased had attended and been present at a large number of civic activities, membership drives, and trade excursions, both by way of rail and airplane.

In addition, the deceased, representing the Majestic Theater, had attended a large number of motor-cade and aviation projects in various parts of West Texas. He had attended the opening of the Denton, Tex., airport in 1928, was a participant in the first annual aerocade in November, 1928, and was special representative of an airport project at Vernon, Tex., in 1928.

It was testified to without dispute by the general manager of deceased's employer that he had sent the deceased to the opening of the San Angelo airport in West Texas, as it appeared to him to be good advertising to have the theater represented in an aerocade of twenty-one ships. Shytles went to San Angelo on the company's business, and on the company's pay, and in pursuance of his efforts to advertise the company's business. While on the journey, and in the course of it, he was killed.

These facts permit no other conclusion than that the injury to the employee originated in the work and business of his employer, and that he was killed while engaged in the furtherance of its affairs and business.

██ This we do not understand appellant to dispute. Its contention is that the deceased was not covered by the policy under the Workmen's Compensation Law because he was within the exception "one whose employment is not in the usual course of the trade, business, profession or occupation of his employer."

It insists that under the authorities and the reason of the law deceased was not covered. That the usual course of the trade, business, profession, or occupation of his employer was the theater business, and that attending airplane celebrations is no part of that business.

In support of its position it cites Kelly v. Industrial Commission, 326 Ill. 320, 157 N. E. 209; Morse v. New Amsterdam Cas. Co. (C. C. A.) 37 F.(2d) 100; Oilmen's Reciprocal Ass'n v. Gilleland (Tex. Com. App.) 291 S. W. 197, in which cases the controlling fact was that the employee in question was engaged temporarily to do some new construction work on the plant of the employer, and in none of them was the employee employed regularly to conduct or carry on the usual business of the employer.

Against these authorities appellees cite Solar-Sturges Mfg. Co. v. Industrial Commission, 315 Ill. 352, 146 N. E. 572, an injury to a cigar salesman on his way to a store to buy cigars to give to customers whom it was his duty to solicit; Wells v. Lumberman's Reciprocal Ass'n (Tex. Com. App.) 6 S.W.(2d) 346, where one employed by the day by a manufacturer to make repairs on a building of the plant was held to be within the terms of the statute.

In our opinion the cases cited by appellant are not in point here, for those were all cases where the employee was engaged to do something though useful to, yet not a part of the usual business of, the employer, while here the very terms of the employment had to do essentially and only with the employer's usual business, for the deceased was employed as the manager of that business and his employment at once comprehends and is limited by the nature and scope of that business.

If the business of the theater operator be conceived of in terms alone of the building in which the pictures are shown, it might well be contended that the activities of the deceased, in attempting to advertise the business of his employer, was not within its scope; but it is fundamental of all businesses which have goods to sell, and especially of an amusement business, that the most important element in the doing of that business is advertising and trade drumming.

If this is so, and we think it cannot be doubted, the conclusion follows inevitably that the deceased's injury was compensable, for it was incurred, not only while he was engaged generally in furthering his master's business, but while he was in the actual performance of an act looking to the furtherance of its most usual and characteristic phase, advertising, and the drumming up of trade.

The Supreme Court of Texas in Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S. W. 72, 73, 28 A. L. R. 1402, has in a thoroughly considered opinion laid down the principle controlling here in these words: "An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business. * * * Though injuries arising from risks incidental to employment most frequently occur during hours of active labor and on premises within the control of the employer, yet they are not always so circum-

444

scribed either as to time or place. * * * Our statute declares that it is not necessary to fix liability that the injury be sustained on the employer's premises." And characterizing the statute as "remedial" it declares that it "should be liberally construed * * * to accomplish its purpose and to promote justice."

In Texas Employers' Ins. Ass'n v. Herron, 29 S.W.(2d) 524, 528, the Court of Civil Appeals of Texas, speaking through Chief Justice Gallagher, has very well summed up the state of the law thus: "The terms of the employment may contemplate 'that the services rendered thereunder shall be rendered in part at least on premises other than those of the employer, or by traveling on public streets and highways.' * * * The risks and hazards incident thereto are encountered by him in order to perform the task assigned him by his employer, and accidental injuries sustained as a result thereof originate in the work or business of his employer and are sustained in the course of his employment."

In the light of these authorities and the policy itself it is plain that the supposed difficulty in this case arises out of the confusion between the employment and the things done under that employment.

The employment must be in the business which is usual to the employer, and this is determined by the nature and character of that business and the contract of employment. Nothing in the statute nor in the policy requires that the particular activities of an employee in carrying on that business have the quality of usualness or repetition; he might conceivably do a different thing each day.

One employed in the usual business of his employer is just as fully covered when the acts which are done by him in carrying it out are the occasional and unusual as when they are the usual, provided the employment is general in the business, as this one was, and the acts are within the reasonable scope of that employment and in furtherance of that business.

To say that a theater manager killed while on an airplane trip to advertise and obtain trade for his theater, with the consent and approval of his employer and on his employer's pay, comes within the exception of the statute excluding an employee as "not in the usual course of" that company's business, would be to deny the reality of the occurrence, and, because the particular incident was unusual, to close the eyes to the visual-

ness of its general character, that is, advertisement and trade promotion.

Finding no error in the record, the judgment of the court below is affirmed.