Jack Russell Calvert, Appellant, v. Illinois Power and Light Corporation, Appellee.

Gen. No. 39,196.

244

 Heard in the third division of this court for the first district at the October term, 1936. 

Opinion filed June 30, 1937.

CRAHEN, SULLIVAN, O'TOOLE &,SULLIVAN and GEORGE E. BILLETT, all of Chicago, for appellant.

E. BENTLEY HAMILTON, for appellee.

MR. JUSTICE HEBEL delivered the opinion of the court.

This cause is in this court upon the petition of the plaintiff for leave to appeal from an order of the superior court of Cook county granting a new trial, which was allowed.

On April 29, 1936, after a hearing of the cause before the court and a jury, a verdict was returned in open court finding the issues for the plaintiff and assessing his damages in the sum of $21,250.

Thereafter the defendant filed a motion for judgment *non obstante veredicto,* and also a motion for a new trial; and subsequent thereto on July 31, 1936, the trial judge granted defendant's motion for a new trial.

The action upon which this case was brought is one at common law for alleged negligence, and was instituted by the plaintiff against the defendant company, as the result of an accident which happened on September 14, 1930, whereby the plaintiff was injured. At the time of the accident and prior thereto, plaintiff was a student at the University of Illinois, located at Champaign, Illinois.

To the declaration the defendant filed a plea of the general issue, and subsequent thereto several specific pleas were filed by the defendant company in which it is alleged that the plaintiff was barred from recovery

in his common law action, due to the fact that the University of Illinois was operating under and subject to the provisions of the Workmen's Compensation Act of Illinois.

Replications were filed by the plaintiff to these several pleas.

The evidence offered on behalf of the plaintiff shows that on the day in question he was driving a milk wagon owned by the University of Illinois, in a northerly direction upon a certain thoroughfare known as Sixth street, at the intersection of John street, in Champaign, Illinois, about 6:00 a. m., when his truck came in contact with a certain trolley wire, which had become loosened and was looped down over the street at a height of about six feet from the street level, and of which the plaintiff had no knowledge until it came in contact with the windshield of his truck; that the defendant company had notice of the condition of the hanging trolley wire over the street at the point hereinabove indicated, but that after receiving notice of this condition about 5:00 a. m., an hour before the accident occurred, the company made no effort to guard the intersection or to remove the wire hanging in the manner described until at least an hour after receiving notice. There is evidence, however, that a police officer of Champaign, Illinois, was present at the intersection directing traffic prior to the time of the occurrence of the accident, but that he had left the intersection and was at least fifty feet away when the accident took place.

The evidence shows that plaintiff's injuries were of a permanent character; that he was obliged to expend $5,000 for medical and hospital care, and that at the present time his nose is deformed and his eyesight impaired.

The defendant offered evidence by the testimony of certain employees of the University of Illinois that

the University of Illinois in certain of its departments kept, maintained and operated certain machinery, sharp edged tools, electric motors, motor trucks, etc. for the purpose of showing that the University of Illinois automatically was bound by the Workmen's Compensation Act. The plaintiff urges that the order granting a new trial was erroneous for the following reasons:

1. That the question as to whether or not a person or corporation is operating under the Workmen's Compensation Act is a question of fact.

2. That the University of Illinois was not operating under the Compensation Act either automatically or by election.

3. That upon a motion for a new trial the trial court, when passing on said motion, has no right to weigh the evidence, and the verdict in this case was warranted by the record and justified by the evidence.

The important issue in this case is whether the defendant was controlled by the provisions of the Workmen's Compensation Act in force at the time of the accident. Par. 201 (a) of section 1 of ch. 48, Ill. State Bar. Stats. 1935; Jones Ill. Stats. Ann. 143.17, is as follows:

"Election by any employer to provide and pay compensation according to the provisions of this Act shall be made by the employer filing notice of such election with the industrial commission, or by insuring this liability to pay compensation under this Act in some insurance carrier authorized, licensed or permitted to do such insurance business in this State."

Par. 202, section 3, which applies not alone to individuals, but also to municipal corporations, is in the following words:

"The provisions of this Act hereinafter following shall apply automatically and without election to the State, county, city, town, township, incorporated vil-

lage or school district, body politic or municipal corporation, and to all employers and all their employees, engaged in any department of the following enterprises or businesses which are declared to be extra hazardous, namely:

. . . . .

"3. Carriage by land, water or aerial service and loading or unloading in connection therewith, including the distribution of any commodity by horse-drawn or motor driven vehicle where the employer employs more than two employees in the enterprise or business, except as provided in sub-paragraph 8 of this section."

The plaintiff during September of 1930, and also during the year previous had worked for the University as a driver of one of its milk trucks used for delivering milk to private consumers, which was sold both at retail and wholesale to persons and corporations in the cities of Champaign and Urbana, Illinois, at rates somewhat higher than regular rates for milk in that vicinity, and plaintiff had also worked in the Bottling Works of the University, for which work he received 35c per hour in 1929 and 1930.

The defendant calls our attention to the evidence that the University maintained three retail trucks and one wholesale truck for the delivery of milk to retail and wholesale customers, all of which were motor driven. This employment of the plaintiff in delivering milk was from 4:30 a. m. to 7:30 a. m., for which he was paid and received compensation of $40 per month. On the morning in question he was not only taking care of his own route but also the route of another driver who was absent on vacation. This work was done with the knowledge and acquiescence of the University, and was performed as one of the conditions laid down by the University, namely, that one driver should take over the route of another if it became necessary for any reason to do so.

There seems to be no dispute in the evidence that the University employed more than two trucks and more than two employees in the delivery of a commodity for hire, and that altogether the University had between 200 and 300 men working as employees who were not students or connected in any way with the instruction or courses offered by the University. The men so employed operated wood-working machinery, electric drills, maintained the various sharp edged tools, saws and various implements which were kept by the University, and worked in the machine shop, the power plant and on band saws, planers, drills, joiners and lathes.

On April 2, 1930, the United States Fidelity & Guaranty Company issued its certificate of insurance, insuring the Board of Trustees of the University of Illinois for accidents to chemists, clerical office, drivers and chauffeurs under Policy No. Z-539607. The Indemnity Company of North America also issued a certificate of insurance for a policy effective February 4, 1929, which continued in force until the policy of the United States Fidelity & Guaranty Company became effective on April 2, 1930. The records of the Industrial Commission show that the insurance remained in full force and effect until March 21, 1931.

The University of Illinois was a "body corporate and politic" of the State of Illinois. It was incorporated under the Act entitled, "An Act to Provide for the Organization and Maintenance of the Illinois Industrial University, approved February 28, 1867, and the Act, which is set forth in Smith-Hurd Illinois Revised Statutes, 1933, ch. 144, par. 22, sec. 1, provides that it "shall be a body corporate and politic, to be styled 'The Board of Trustees of the Illinois Industrial University' ", and by Amendment approved June 19, 1885, the name was changed to University of Illinois. The Act further provided that it should

have power to contract and be contracted with, to sue and be sued, to plead and be impleaded, etc.

The defendant contends that plaintiff was a student only in landscape gardening and had nothing whatever to do, so far as his instruction was concerned, with the Dairy Department or the Agricultural Department, both of which were under the School of Agriculture.

Defendant also contends that the University used explosive gases or vapors or corrosive acids, and sharp edged cutting tools, grinders or implements and is an enterprise in which statutory or municipal ordinance regulations are now or shall hereafter be imposed for the regulating, guarding, use or the placing of machinery or appliances for the protection and safeguarding of the employees or the public therein, so that the Workmen's Compensation Act, section 3, applied automatically to the University.

Plaintiff's answer to this contention is that whether or not an employer elects to operate under the Compensation Act is a question of fact, and cites in support of his position the case of *Paul v. Industrial Commission*, 288 Ill. 532, in which the court says: "Election by an employer to provide and pay compensation according to the provisions of this act shall be made by the employer filing notice of such election with the Industrial Board."

On the question of whether or not the employer elects to operate, being a question of fact, the court said in the case of *Gross v. Cuneo Press, Inc.*, 251 Ill. App. 560.

"Such evidence, therefore, tended to show that plaintiff when injured was not acting within the scope of any duty he was bound to perform to protect the interest of his employer, and hence presented as a question of fact for the jury to determine and not for the trial judge, whether or not the accident in ques-

tion arose out of and in the course of plaintiff's employment.'' And in order to establish from the proof that the employer is governed by the provisions of the Act, the burden is upon the employer making the election.

The facts upon which the contention arose as to the nature of plaintiff's employment by the University are not in dispute. The question is as to whether the plaintiff's employment by the University on the day of the accident was such as would bar him from maintaining his action. It is hardly necessary to repeat the facts disclosed by the record on this question. The plaintiff worked as a driver of a motor driven car, delivering milk and kindred products for his employer, the University of Illinois. His employment was not a casual one; he was employed regularly and engaged in the usual course of his employer's business at the time of the accident. *Kelly v. Industrial Commission,* 326 Ill. 320.

The injuries suffered by the plaintiff by reason of the accident were the result of the risk arising out of the nature of the plaintiff's employment, *Sure Pure Ice Co. v. Industrial Commission,* 320 Ill. 332; *Board of Education v. Industrial Commission,* 321 Ill. 23; *Mueller Const. Co. v. Industrial Board,* 283 Ill. 148, or kindred thereto, *Union Starch Co. v. Industrial Commission,* 344 Ill. 77.

Mr. Justice Farthing, speaking for the Supreme Court in the case of *Forest Preserve District v. Industrial Commission,* 357 Ill. 389, where a relief worker was employed to work for a forest preserve district, said:

''Where a municipal corporation does not engage in any enterprise or business or carry on any endeavors which include those activities declared by section 3 of the act to be extra-hazardous the corporation does not come automatically under the provisions of the act. (*Village of Chapin v. Industrial Com.,* 336 Ill.

461.) The record must show affirmatively that the municipality was engaged in some one of the extra-hazardous enterprises or businesses enumerated. (*Board of Education v. Industrial Com.*, 346 Ill. 505.) But the specific work engaged in by the employee need not be a part of such extra-hazardous undertaking or bring him in contact with it. (*Illinois Publishing Co. v. Industrial Com.*, 299 Ill. 189.) The business or enterprise in which plaintiff in error was embarked was the maintenance of a forest preserve district for the public. The record shows that its main work was maintenance—removing debris, transplanting trees and shrubs, etc. Putkonen's foreman testified that the truck was equipped with axes, picks and other tools. Such sharp-edged tools are required and were used in the work of plaintiff in error, and clearly their use brings the district within the provisions of subsection $7\frac{1}{2}$ of section 3 of the act above quoted."

In the instant case it is contended that due to the fact that certain machinery was operated, sharp edged tools were used and motor trucks driven for the uses of the University of Illinois, the University was automatically bound by the Workmen's Compensation Act. Under section 3 it is specifically provided that carriage by land, water or aerial service and loading or unloading in connection therewith, including the distribution of any commodity by horsedrawn or motor driven vehicle, where the employer employs more than two employees in the enterprise or business, subjects the employer to the provisions of the Workmen's Compensation Act.

There seems to be no dispute that motor driven vehicles were used by the University, in which use it employed drivers to operate the cars, one of the drivers being the plaintiff in this case, and apparently the University is subject to the Workmen's Compensation law because of its maintenance of machinery,

electric drills and tools, band saws, planers, joiners and lathes. And this is clearly within the reasoning of the Supreme Court in the case of *Forest Preserve District v. Industrial Commission*, 357 Ill. 389.

The plaintiff cites a number of cases, but the one which this court has considered as being more nearly in point is *North v. Board of Trustees, University of Illinois*, 201 Ill. App. 449, and calls our attention to the holding of the court that neither the general nature and character of the work of educational instruction, nor the method adopted in giving it can properly be denominated an "enterprise" as that term implies under the Workmen's Compensation Act. The court in that opinion did say:

"The question is, whether by the use or handling of such explosives, inflammable fluids and molten metal as aforesaid, appellant is engaged in an 'enterprise' as designated in said quoted paragraphs 6 and 7. The record does not disclose the extent of their use. But whether 'in dangerous quantities' or not, we do not construe the term 'enterprise' as used in said act to apply to such a state of facts. The University was chartered to furnish instruction to students in various branches of learning. Neither the general nature and character of the work of educational instruction, nor the methods adopted in giving it, can properly be denominated an 'enterprise' as that term is usually defined. Nor would they be brought within the definition of that term as employed in the statute merely by the incidental use and handling of the materials mentioned in the statute."

Subsequently, the Supreme Court of Illinois, in the case of *Board of Education of High School Dist. 502 v. Industrial Commission*, 301 Ill. 611, said this as to the application of the Workmen's Compensation law on the question of an injury which happened to William A. Hemmer, a manual training teacher employed

by the Board of Education of a high school who was injured while instructing a pupil in the use of a circular saw in making a drawer:

"Under sections 4 and 5 of the Workmen's Compensation Act the school district was an employer and the plaintiff in error was an employee. The only question in dispute is whether the district was subject to the provisions of the Workmen's Compensation Act. On the part of the plaintiff in error it is contended that the provisions of the act apply automatically to the school district because it is engaged in an enterprise in which statutory regulations are imposed for the regulating, guarding, use or placing of machinery or appliances for the protection and safeguarding of the employees or the public therein, under subdivision 8 of section 3 of the Workmen's Compensation Act.

"The manual training room in which these machines and tools were used and operated was a workshop within the ordinary meaning of the term, which is a building or room where any work is carried on, especially a handicraft. The defendant in error contends that the conducting of a manual training school is not an enterprise within the meaning of subdivision 8 of section 3 of the Workmen's Compensation Act, and it quotes from *Uphoff v. Industrial Board*, 271 Ill. 312, that 'it is plain from the use of the word "enterprise" in other subdivisions of said paragraph (b) that it was intended to mean a work of some importance that might properly be considered arduous or hazardous.' It argues that it would be contrary to common knowledge of the kind of instruction given in such an institution to regard a manual training school as an enterprise of this character.

"The business in which the school district was engaged was the conducting of a high school, including, among others, a manual training department. It is not

unreasonable to regard such an enterprise as a work of some importance, which might even be regarded as arduous. When in the conduct of that enterprise the employees are required to engage in the handling and operation of machinery so dangerous that the statute requires for the protection of employees that it shall be so guarded and located as not to injure them, it may also be regarded as attended with some degree of hazard. It is a matter of common knowledge and general remark that a buzz-saw is a dangerous thing to deal with.'' And the court in conclusion directed the circuit court to set aside the decision of the industrial commission and remand the cause to the commission, with directions to hear it on its merits.

From the conclusion of the Supreme Court it would seem that the manual training department of the high school was an enterprise which brought it within the terms of the Workmen's Compensation Act, and this would apply with equal importance to the provisions of the statute under the terms of which employment of the plaintiff was had, namely that the enterprise conducted by the University brought it automatically within the terms of the provisions of the Workmen's Compensation Act, and by employing more than two employees in the enterprise or business it was conducting in the distribution of a commodity by the motor driven vehicle used to deliver its milk products, we are of the opinion that the plaintiff was an employee and subject to the provisions of the Workmen's Compensation Act.

The University of Illinois filed with the Illinois Industrial Commission an Employer's written acceptance of the Illinois Compensation Act, wherein it accepts the provisions of the Workmen's Compensation Act of Illinois to provide and pay compensation for accidental injuries to employees in accordance with the terms thereof. This written acceptance is signed by

the Board of Directors of the University of Illinois, but is not further identified or signed by any member of the Board. This so-called acceptance is dated at Urbana, Illinois, February 11, 1929, and at the time the insurance was taken out by the University it was insured against damages to its employees for injuries sustained in the course of their employment, as provided by the Act. The policies for this purpose were issued by the United States Fidelity & Guaranty Company and the Indemnity Insurance Company of North America. These policies were in force from February 11, 1929, until sometime after September, 1930, and were issued by the companies after the election to be bound by the Workmen's Compensation Act was filed by the University of Illinois.

This action of the University of Illinois was in compliance with ch. 48, par. 201 of sec. 1, which is:

"That an employer in this State, who does not come within the classes enumerated by section three (3) of this Act, may elect to provide and pay compensation for accidental injuries sustained by any employee arising out of and in the course of the employment according to the provisions of this Act, and thereby relieve himself from any liability for the recovery of damages, except as herein provided.

"(a) Election by any employer to provide and pay compensation according to the provisions of this Act shall be made by the employer filing notice of such election with the industrial commission, or by insuring this liability to pay compensation under this Act in some insurance carrier authorized, licensed or permitted to do such insurance business in this State."

And so from the facts as they are stated above, the University of Illinois had elected to come within the provisions of this Act by the filing of such election with the Industrial Commission and by having issued to it the policies of insurance, the effect of which would

be that the employee of such employer, as a part of his contract of hiring, shall be deemed to have accepted all the provisions of the act, unless the employee shall file a notice to the contrary with the Industrial Board. This is covered by (c) of the same section, wherein it is provided:

"(c) In the event any employer mentioned in this section, elects to provide and pay the compensation provided in this Act, then every employee of such employer, as a part of his contract of hiring or who may be employed at the time of the taking effect of this Act and the acceptance of its provisions by such employer, shall be deemed to have accepted all the provisions of this Act and shall be bound thereby unless within thirty (30) days after such hiring or after the taking effect of this Act, and its acceptance by such employee, he shall file a notice to the contrary with the industrial board, . . ."

It would follow from the provisions of the Workmen's Compensation Act that the University of Illinois having accepted and elected to come within the provisions of this Act, the employee, Jack Calvert shall also be deemed to have accepted the provisions of the Act and be bound thereby, not having filed a notice to the contrary with the Industrial Commission within the time limited by the provisions of this section.

The Supreme Court in the case of *Edmonds v. Industrial Commission,* 350 Ill. 197, in passing upon the question of an employer's liability to pay compensation, though not engaged in an enterprise subject to the provisions of the Workmen's Compensation Act, said:

"While the maintenance of a home or residence occupied by its owner is under ordinary conditions not such an enterprise or business as brings its owner under the provisions of the Workmen's Compensation Act, yet in this case the parties are under the act

because Edmonds had insured his liability to pay compensation with a company authorized to do such insurance business in this State. Under the provisions of section 1 of the act (Smith's Stat. 1931, chap. 48, par. 138.) this insuring of his liability to pay compensation under the act was tantamount to an election to be bound under the act as an employer.''

Therefore, if we apply the reasoning of the Supreme Court to the instant case, we find that the University of Illinois, and also the plaintiff, who was an employee of the University, are subject to the Workmen's Compensation Act.

The provision of the act relied upon by the plaintiff that the statute does not apply is part of subparagraph 8 of sec. 3, par. 202 of the chapter above cited, where this language appears:

''. . . Provided, nothing contained herein shall be construed to apply to any work, employment or operations done, had or conducted by farmers and others engaged in farming, tillage of the soil, or stock raising, or to those who rent, demise or lease land for any such purposes, or to any one in their employ or to any work done on a farm or country place, no matter what kind of work or service is being done or rendered.''

However, as indicated by our Supreme Court in the case above cited, even if the University was not subject to the Act because of the reason stated by the plaintiff, still by electing to accept the provisions of the act and by having insurance policies issued to protect the University from damages, the plaintiff would also be within the provisions of the act.

The University of Illinois is an institution of learning and, therefore, is not an enterprise engaged in farming solely, and in the opinion of this court it is subject to the provisions of the Workmen's Compensation Act.

The order granting a new trial is vacated and set aside and judgment is entered here for the defendant.

*Order granting a new trial is vacated and set aside and judgment here for defendant.*

DENIS E. SULLIVAN, P. J., and HALL, J., concur.

## ON REHEARING.

In the consideration of the rehearing granted to the plaintiff upon his petition there are two suggestions which we will consider, namely, whether the plaintiff was employed by the University of Illinois at the time of the accident in which he was injured, or was he carrying on the work for one of the drivers who failed to appear for the purpose of delivering milk.

When we considered the case, we said this is our opinion upon this question:

"The facts upon which the contention arose as to the nature of plaintiff's employment by the University are not in dispute. The question is as to whether the plaintiff's employment by the University on the day of the accident was such as would bar him from maintaining his action. It is hardly necessary to repeat the facts disclosed by the record on this question. The plaintiff worked as a driver of a motor driven car, delivering milk and kindred products for his employer, the University of Illinois. His employment was not a casual one; he was employed regularly and engaged in the usual course of his employer's business at the time of the accident. *Kelly v. Industrial Commission,* 326 Ill. 320."

The conclusion which we reached in the opinion was that by par. 202, sec. 3 of ch. 48, Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 143.18, the University of Illinois was controlled by the Workmen's Compensation Act, wherein under subsec. 3, the Legislature defined acts which would bring the employer automatically under the act. It is provided by section 3 as follows:

"The provisions of this Act hereinafter following shall apply automatically and without election to the State, county, city, town, township, incorporated village or school district, body politic or municipal corporation, and to all employers and all their employees, engaged in any department of the following enterprises or businesses which are declared to be extra hazardous, namely:

. . . . . .

"3. Carriage by land, water or aerial service and loading or unloading in connection therewith, including the distribution of any commodity by horse-drawn or motor driven vehicle where the employer employs more than two employees in the enterprise or business, except as provided in sub-paragraph 8 of this section."

The plaintiff strenuously contends that at the time of the accident he was not employed in the service of the University of Illinois, but that he was carrying on an independent service for a driver who failed to appear on the morning in question to deliver the milk to the customers on this driver's route, and that the plaintiff performed this service, but not at the direction of the University.

We are inclined to adhere to what we said in our opinion upon this question, but the defendant adds this quotation from the record, where the plaintiff testified as follows:

"It was customary among drivers there occasionally to take someone else's route or relieve somebody else, to take it on. That was done with the knowledge and approval of the Dairy Department of the University. I don't happen to remember the name of the boy. I made arrangements to take this boy's route."

"Q. Who was there at the time at the University that knew about it?

"A. Any of the proper authorities that had charge of the Dairy. Dr. Swerington, Dr. Ruehe or Dr. Tracy. They knew I was taking his route that morning and

they didn't object to that. It was customary for drivers to help each other and the University knew of it."

So it appears from the facts in this case that the plaintiff was doing this work, and from his evidence the officials in charge of the dairy where he was employed knew he was taking this route and did not object; that it was customary for the drivers to help each other. The plaintiff contends that the facts as to how and where he was employed were facts for a jury. The facts as we view them are so clear, and the evidence so uncontradictory, that there was nothing for the jury to decide. It became a question of law whether the plaintiff was engaged in service at the time, which under the provisions of the Workmen's Compensation Act brought the University of Illinois automatically under its provisions, and we believe from a re-examination, what we stated in the opinion will be adhered to on this question.

The remaining question we wish to discuss is as to the written acceptance filed by the University of the provisions of the Workmen's Compensation Act, together with the filed insurance policies, as outlined in the opinion.

The defendant contends that the court did not admit the written acceptance by the University and the two insurance policies filed in evidence, but insists that the court would have the right to consider these documents under ch. 110, par. 220, sec. 92 of the Practice Act; Jones Ill. Stats. Ann. 104.092, where it is provided by subsec. (c): "Order or permit the record to be amended by correcting errors or by adding matters which should have been included"; and further by subsec. (d): "Permit such further testimony to be taken in or presented to the reviewing court as it may deem necessary, where evidence has been erroneously excluded or where there has been an omission of proof at the trial of some fact which, under the circumstances

of the case, may subsequently be proved without involving any question for a jury and without substantial injustice to either party.'' And counsel points to these subsections as providing for the court to consider the evidence which it contends was erroneously excluded.

The written acceptance of the terms of the Workmen's Compensation Act was signed by printing thereon the name of the University of Illinois. Two insurance policies were filed, one of which was the Indemnity Company of North America, which expired by its terms; and the other, United States Fidelity & Guaranty Company, still in force at the time of the accident.

There is a serious question as to whether the court was justified in excluding these documents, but we are not prepared to say that where evidence has been excluded by the trial court, that the Appellate Court, by this provision of the Practice Act, would have jurisdiction to consider the evidence as if it had been admitted. From what we have said upon the question of the University being automatically under the Act, it will not be necessary to further consider the question of whether the court erred in refusing to admit in evidence the written acceptance by the University of Illinois; nor the filed insurance policies.

For the reasons stated upon the rehearing, we adhere to what we said in our original opinion, except as modified upon the question of whether the court erred in refusing to admit the written acceptance by the University of Illinois, wherein it elects to provide and pay compensation according to the provisions of the Workmen's Compensation Act, and the refusal to admit in evidence the two insurance policies that were filed.

*Opinion adhered to except as modified.*

DENIS E. SULLIVAN, P. J., and HALL, J., concur.